THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHRIS BLANE MANLEY, Defendant-Appellant.

Fourth District   No. 4—88—0580

Opinion filed April 11, 1990.

STEIGMANN, J., concurring in part and dissenting in part.

154

Daniel D. Yuhas and M. Jeffrey Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On May 13, 1988, the circuit court of Macon County convicted defendant Chris Blane Manley of unlawful possession of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)) and unlawful possession of cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 704(a)). The court subsequently sentenced him to three years' imprisonment for the controlled substances offense and 30 days' imprisonment for the cannabis offense, the sentences to run concurrently.

Defendant now appeals, contending: (1) the State failed to prove him guilty of the offenses charged beyond a reasonable doubt because it failed to establish the offenses occurred in Macon County; (2) his convictions must be reversed, as the stipulated bench trial at which he was convicted was tantamount to a plea of guilty, and the court failed to give him required Supreme Court Rule 402(a) (107 Ill. 2d R. 402(a)) admonitions; and (3) his fourth amendment right against unreasonable seizures was violated when police officers arrested him without probable cause. We affirm.

On May 13, 1988, this matter was called for a bench trial. At that time, defense counsel informed the court the parties had agreed to a stipulated set of facts which would support a conviction. The State then provided the court with the following stipulated facts:

"Your Honor, the evidence would show that Mr. Manley was stopped by Decatur police officers, subsequently arrested. From his person was [sic] taken various items which were sent to the Department of State Police, Bureau of Forensic Sciences, Forensic Science Laboratory, where they were tested by Michael E. Cravens who would be qualified as an expert in the testing and identification of cannabis and controlled substances. Mr. Cravens would testify that he tested the substances that were taken from Mr. Manley by Decatur police officers. Mr. Cravens would further testify that among those items he tested was a substance containing lysergic acid diethylamide, commonly

known as L.S.D., that was less than 30 grams of that substance. Also tested by Mr. Cravens was a quantity of a green-leafy substance that was seized from the automobile by Decatur police officers. Mr. Cravens would testify that that green-leafy substance was a substance weighing not more than 2.5 grams and containing cannabis."

Defense counsel agreed those facts constituted the complete stipulation between the parties. The court accepted the stipulation and determined the State had proved defendant guilty of the offenses charged beyond a reasonable doubt. It later imposed the sentences as aforementioned.

Defendant now maintains the State failed in its burden of proving him guilty beyond a reasonable doubt because the stipulated facts failed to establish the crimes had occurred in Macon County. We note defendant raises this contention for the first time on appeal, and the State argues that, because he failed to bring the error to the attention of the trial court, the issue should be deemed waived.

■ The requirement that the State prove, as an element of the offense, that the offense occurred in the county where the defendant is charged has long been a trap for unwary young lawyers assigned to prove a criminal case. However, this court has recognized that requirement as late as our decision in *People v. Ramsey* (1986), 147 Ill. App. 3d 1084, 496 N.E.2d 1054. The failure to prove a necessary element of an offense is fatal to a judgment of conviction and may be raised by the defendant for the first time on appeal. (*People v. Walker* (1955), 7 Ill. 2d 158, 130 N.E.2d 182; *People v. King* (1987), 151 Ill. App. 3d 644, 503 N.E.2d 384.) Accordingly, the issue of the sufficiency of proof that the offense occurred in Macon County has not been waived.

■ Defendant does not dispute that venue may be proved by circumstantial evidence. Here, the only indication in the stipulation that Macon County was involved was the statement that the seizure of the contraband evidence at the scene of the crime was made by Decatur police officers. That, of itself, was insufficient to prove venue. (*People v. White* (1975), 26 Ill. App. 3d 659, 325 N.E.2d 313.) However, defense counsel agreed that the parties had a "stipulated set of facts that *will support the conviction.*" (Emphasis added.) Accordingly, we deem the intent of the stipulation to be that the parties agreed the offense occurred in Macon County.

■ Defendant's contention his stipulation as to the facts of the case is tantamount to a guilty plea requiring the court to give admonitions pursuant to Supreme Court Rule 402(a) is based upon the deci-

sion in *People v. Stepheny* (1974), 56 Ill. 2d 237, 306 N.E.2d 872, and its progeny, *People v. Smith* (1974), 59 Ill. 2d 236, 319 N.E.2d 760. The *Stepheny* court held that, when an accused stipulates to all of the facts of a case and the sufficiency of those facts to prove the offense, the stipulation is so similar to a plea of guilty as to require Rule 402(a) admonitions. Defendant's contention that such is the case here is inconsistent with his assertion the element of venue was not covered by the stipulation. However, he has properly phrased his points of error in the alternative and has not waived this issue.

In *Smith* and its progeny, no issue which could defeat the conviction was presented and, thus, preserved for appeal. Often in prosecutions concerning narcotics, controlled substances, or cannabis, the conviction turns upon the propriety of the seizure of contraband. The record clearly indicates such was the case here. Under circumstances where, as here, the accused has lost a pretrial motion to suppress evidence allegedly improperly seized, an accused often stipulates as to the existence of facts sufficient to prove his guilt but appeals, claiming error in, the denial of the motion to suppress. *People v. Sullivan* (1979), 72 Ill. App. 3d 533, 536, 391 N.E.2d 241, 243.

In *People v. Sampson* (1985), 130 Ill. App. 3d 438, 473 N.E.2d 1002, *People v. Ford* (1976), 44 Ill. App. 3d 94, 357 N.E.2d 865, and *People v. Fair* (1975), 29 Ill. App. 3d 939, 332 N.E.2d 51, this court held Supreme Court Rule 402 admonishments were unnecessary to uphold conviction obtained on facts introduced entirely by stipulation. In *Sampson*, the defendant had made a previous motion to dismiss based upon grounds the statute under which defendant was charged was unconstitutional. The court had been told at the time the defendant was preserving that question.

In *Ford*, prior to stipulation the defense had made and lost motions to suppress statements defendant had made and to be treated as a sexually dangerous person. The opinion did not show whether, as in *Sampson*, defendant had made any express statement to the court he was preserving the issues raised in his two motions. This court mentioned the defendant had not stipulated the evidence was sufficient to convict but indicated the main reason that case and *Fair* differed from those holding a stipulated bench trial to be tantamount to a guilty plea was the preservation of an appealable issue. (*Ford*, 44 Ill. App. 3d at 97-98, 357 N.E.2d at 867-68.) In *Fair*, the defendant waived jury trial and agreed to a bench trial where he stipulated to the State's evidence and he presented no evidence. The court had previously denied a defense motion to suppress a confession. The agreement included a provision that the motion to suppress would be heard

by a different judge. This court held no admonitions were necessary before accepting the stipulation.

The record here gives no indication the defendant made any direct statement about preserving error in the ruling on his motion to suppress at the time he stipulated to the evidence. However, he had preserved error. As the case was tried at bench, no post-trial motion was necessary to preserve error raised in the trial court. (*People v. Crowder* (1988), 174 Ill. App. 3d 939, 529 N.E.2d 83.) The issue of impropriety in the seizure of evidence was raised by the motion to suppress just as it was in *Ford* and *Fair*.

Furthermore, at the time the court accepted the stipulation, defense counsel indicated defendant would stipulate to the facts and their sufficiency to support the conviction and that there would be a presentence report and a sentencing. He then said, "we'll just go from there." The latter statement would indicate the defense would appraise the situation after sentencing and then determine whether to appeal the suppression issue. The facts here do not conform to the situation described in *People v. Russ* (1975), 31 Ill. App. 3d 385, 334 N.E.2d 108, relied on by defendant, whereby a stipulated trial amounted to a plea of guilty when the defendant had no genuine defense.

We hold no admonitions were required here.

Finally, we address defendant's contention his fourth amendment right against unreasonable seizures was violated when Decatur police officers arrested him without probable cause. The evidence presented at the suppression hearing, taken most favorably to the State, revealed the following chain of events. On December 6, 1987, Decatur police officers were on the lookout for a young Korean man named Daniel Slagel. The police had earlier executed a search warrant of Slagel's apartment and had discovered numerous items recently stolen in area burglaries. Several officers parked outside Slagel's apartment in unmarked police cars to watch for him.

Three males, including Slagel, defendant, and another, subsequently exited Slagel's apartment building. Upon seeing the plainclothes officers exit their cars, Slagel and defendant took off running. The third man, Raymond Good, talked with police and then remained in defendant's car for further instructions. Unable to locate Slagel at that time, the officers returned to headquarters.

Later that evening, Decatur police officer Larry Butler returned to the apartment complex in an unmarked car to "look for" both Slagel and defendant's blue 1984 Oldsmobile Cutlass, as Slagel had last been seen with defendant. Slagel had been described to Butler as a

Korean male, 6 feet 2 inches in height, with black hair, green eyes, a medium complexion, and slim build.

Butler observed two men leave Slagel's apartment building and run to defendant's car. He stated that, because of his position, he could not determine the identity of the two males. Butler followed the vehicle, and the car was later stopped at a Decatur intersection. Several other squad cars assisted Butler with the stop. Butler conceded the driver of the vehicle had not been violating any traffic laws at the time of the stop.

Butler approached the car and asked the driver for his driver's license. While making this request, Butler observed the passenger stuffing something between the driver and passenger seats and also detected a very strong smell of cannabis coming from the vehicle. He asked the two men to exit the vehicle and realized at that point that neither man was Daniel Slagel. Instead, the men were defendant and Good, a Caucasian, 150-pound male, 5 feet 5 inches in height with brown hair and brown eyes.

Butler searched the car and obtained a hot Pepsi bottle which had been "converted to a *** smoking pipe for cannabis." Butler also searched both defendant and his passenger "for cannabis and weapons" and discovered a small amount of cannabis on defendant's person.

Defendant was arrested for possession of cannabis and was taken to the police station. Decatur police officer Kevin Hollingsead performed a more thorough inventory search of defendant's possessions at the station and found squares of paper later determined to contain lysergic acid diethylamide (LSD) in his wallet. Defendant was also arrested for possession of a controlled substance.

Following the hearing, the court denied defendant's motion to suppress the evidence seized. It reasoned that, based on the broader uncontradicted evidence, the officers had probable cause to follow defendant's car and to stop it to determine the identity of the car's occupants and their connection with the criminal activity involving Daniel Slagel. It further maintained the officer had probable cause to arrest defendant for possession of cannabis once he detected the marijuana odor, found the pipe, and discovered cannabis on defendant's person. Finally, it indicated the search of defendant's wallet at police headquarters was justified under the inventory exception to the search warrant requirement.

■ Defendant initially argues the police lacked probable cause to stop his car and in essence effectuate his arrest when the only evidence connecting him to the crime scene was his mere presence there.

However, the connection was much less tenuous than defendant would have us believe. Police officers had last seen a man wanted on charges of possession of recently stolen goods in the company of defendant. In addition, both defendant and the wanted man fled from the apartment building where the items were discovered when approached by plainclothes police officers. While these factors alone are insufficient to justify an arrest, they can be considered with others to determine if probable cause exists. (*People v. Beall* (1976), 42 Ill. App. 3d 452, 355 N.E.2d 756; *People v. Lucas* (1980), 88 Ill. App. 3d 942, 410 N.E.2d 1040.) At any rate, the circumstances clearly justified the *Terry*-type stop which occurred here, since the officers could have reasonably suspected one of the car's occupants was a man wanted in connection with the possession of recently stolen goods. They had reason to stop the car and briefly detain the passengers to investigate the situation. We disagree with defendant's interpretation that the extent of the force used here resulted in his arrest. See 3 W. LaFave, Search and Seizure §9.2(d), at 361-70 (2d ed. 1987).

■ Defendant further maintains the officers lacked probable cause to arrest him for unlawful possession of cannabis simply because they smelled a burning marijuana odor emanating from his car. He claims that, if they had probable cause to arrest anyone, it was his passenger, for he was the person furtively attempting to conceal an item when the officer approached the vehicle. He relies heavily on *People v. Harshbarger* (1974), 24 Ill. App. 3d 335, 321 N.E.2d 138, where the appellate court overturned a defendant's conviction for possession of a controlled substance. The court there concluded his constitutional rights had been violated when police officers arrested all persons (including defendant) present in a room which smelled of burning marijuana despite no evidence of criminal activity on defendant's part.

Here, however, defendant was not arrested until *after* the marijuana was discovered on his person. The police uncovered this evidence following a brief frisk of both defendant and his passenger for weapons and drugs, which pat down was justified due to defendant's recent connection with another individual suspected in recent area burglary activity and other suspicious activity on his part. The officers also had reason to believe other criminal, drug-related activity had recently occurred due to the strong odor of marijuana and the discovery of a warm cannabis pipe, thereby justifying a search of defendant and his vehicle. (See *People v. Stout* (1985), 106 Ill. 2d 77, 477 N.E.2d 498.) Under these circumstances, the police possessed probable cause to arrest the defendant.

For the reasons stated, we affirm the judgment of the circuit court of Macon County.

Affirmed.

SPITZ, J., concurs.

JUSTICE STEIGMANN, concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority opinion which holds that the stipulated bench trial which occurred in this case was not tantamount to a plea of guilty. Because I conclude these proceedings were the "functional equivalent" of a plea of guilty, I would hold that the trial court erred in failing to admonish defendant as required under Supreme Court Rule 402(a)(107 Ill. 2d R. 402(a)). On the venue issue, I concur, but write separately. On the seizure issue, I concur.

## I. APPLICATION OF SUPREME COURT RULE 402

In holding that this defendant need not be admonished in accordance with Supreme Court Rule 402(a), the crux of the majority opinion appears to be that the Rule 402(a) admonitions are not required in cases in which a defendant is going to challenge on appeal a pretrial ruling on the *admissibility* of the State's evidence presented at a stipulated bench trial. Accordingly, the majority concludes that Rule 402(a) admonitions are not required in the present case because defendant, by going through the "stipulated bench trial," preserved his right to challenge on appeal the police seizure of the drugs defendant was ultimately convicted of possessing. The majority correctly cites decisions of this court and other districts of the appellate court in support of this position. However, because I believe those decisions were wrongly decided, I respectfully dissent.

The Illinois Supreme Court first addressed the subject of stipulated bench trials in *People v. Stepheny* (1974), 56 Ill. 2d 237, 306 N.E.2d 872. In *Stepheny*, the defendant was charged with murder and was found guilty of voluntary manslaughter after a stipulated bench trial. On appeal, defendant contended that his trial "was a sham and a mere formality, because the result had been agreed to in chambers and his appointed counsel in effect entered a plea of guilty for him without the necessary explanation of rights and waivers." (*Stepheny*, 56 Ill. 2d at 238-39, 306 N.E.2d at 873.) The supreme court noted that "defense counsel agreed to a disposition of the matter and that

defendant was at most only vaguely apprised of this procedure."
(*Stepheny*, 56 Ill. 2d at 240, 306 N.E.2d at 874.) After citing the stat-
utory precursor to Rule 402(a), which required certain admonitions to
defendants who were pleading guilty (Ill. Rev. Stat. 1965, ch. 110,
par. 101.26(3)), the court concluded that the procedures employed
"contravened the clear directive" of that statute, and defendant's
conviction was reversed and remanded for further proceedings.
*Stepheny*, 56 Ill. 2d at 240, 306 N.E.2d at 874.

This issue was next addressed in *People v. Smith* (1974), 59 Ill. 2d
236, 319 N.E.2d 760, wherein the supreme court stated the following:

> "[W]e cannot condone the procedure described as a 'stipu-
> lated bench trial' which was utilized to obtain defendant's
> armed-robbery conviction. The record reflects that the stipula-
> tion was designed to establish guilt beyond a reasonable doubt.
> Under such circumstances counsel's action was tantamount to a
> guilty plea on behalf of the defendant without the requisite ad-
> monishments of Rule 402. 50 Ill. 2d R. 402.
>
> *People v. Stepheny*, 56 Ill. 2d 237, is dispositive of the issue
> concerning the impropriety of a 'stipulated bench trial.' In
> *Stepheny* defense counsel agreed that a trial would be con-
> ducted and the defendant would be convicted of a lesser of-
> fense. There, the record established that defendant was, at
> most, only vaguely informed of this disposition, which
> amounted to the entry of a guilty plea. We determined that the
> procedure was improper for it violated the statutory directive
> then in effect pertaining to guilty pleas. In the present case
> there is no indication that defendant was made aware of the
> stipulation's effect. *Where the circumstances indicate that cal-
> culated efforts have been made which amount to the entry of a
> guilty plea, we hold that an accused must be afforded the pro-
> tections set forth by Rule 402.*" (Emphasis added.) *Smith*, 59 Ill.
> 2d at 242-43, 319 N.E.2d at 764.

In another case, *Thornton v. Illinois Founders Insurance Co.*
(1981), 84 Ill. 2d 365, 418 N.E.2d 744, the supreme court confronted
the question of whether the defendant's battery conviction, pursuant
to a stipulated bench trial, was the equivalent of a guilty plea. In re-
solving this issue, the supreme court discussed its earlier holdings in
*Stepheny* and *Smith* as follows:

> "Although in *People v. Stepheny* (1974), 56 Ill. 2d 237, and *Peo-
> ple v. Smith* (1974), 59 Ill. 2d 236, the court found that certain
> methods of 'stipulation' were the equivalent of a guilty plea,
> not all stipulations of fact transform a conviction into a guilty

plea. In *Stepheny*, a bench trial was conducted after the defendant pleaded not guilty to the offense charged. After the trial commenced, *the court and defendant's attorney agreed that, regardless of the evidence, the defendant would be found guilty of manslaughter* and sentenced to 10 to 20 years' imprisonment. *The trial was thus a sham.* In *Smith, the parties stipulated* to the facts of the occurrence and also *that such evidence was sufficient to convict.* In both cases, it was held that the 'stipulations' amounted to the equivalent of a guilty plea and that each defendant's right to full admonishments under Supreme Court Rule 402 (73 Ill. 2d R. 402) had been violated.

These cases are distinguishable from the case before us. There is no evidence that Paul's criminal trial was a sham, as in *Stepheny*, or that he stipulated that the evidence was sufficient to convict, as in *Smith. The appellate court found that where a defendant stipulates to facts underlying an offense but leaves the determination of guilt or innocence based on those facts to the trier of facts, the stipulation is not the equivalent of a guilty plea. We agree.*" (Emphasis added.) *Thornton*, 84 Ill. 2d at 371-72, 418 N.E.2d at 747-48.

The last time the supreme court addressed the stipulated-bench-trial issue was in *People v. Weir* (1986), 111 Ill. 2d 334, 490 N.E.2d 1, where the supreme court considered an appeal by the State from an appellate court reversal based on a finding that the defendant had been denied the effective assistance of counsel. In *Weir*, the defendant was convicted of two counts each of unlawful use of weapons and aggravated assault. Before trial, defense counsel had filed a discovery answer stating that intoxication would be presented only in mitigation and not as a defense to the charges. At trial, counsel presented evidence of the defendant's consumption of alcohol on the day in question, but did not raise intoxication as a defense. The appellate court held:

"The action of defense counsel in attempting to use clear evidence of the defendant's intoxication only in *mitigation* amounted to only the formality of a trial since he had already in effect pleaded his client guilty, without his knowledge or consent. (*People v. Stepheny* (1974), 56 Ill. 2d 237, 306 N.E.2d 872.)" (Emphasis in original.) (*People v. Weir* (1985), 131 Ill. App. 3d 562, 565-66, 475 N.E.2d 1033, 1035.)

The supreme court reversed and stated the following:

"The appellate court believed that trial counsel's actions here amounted to no more than a gradual plea of guilty to the of-

fenses. We disagree. Unlike *Stepheny*, the case cited by the appellate court, the proceedings here were not tantamount to a guilty plea; *the record contains no indication that defense counsel agreed to the defendant's convictions or that the trial became merely a formality.* Counsel's presentation of the evidence of the defendant's drinking as a mitigating circumstance, rather than as a defense to the charges, did not operate as a concession of guilt. Moreover, counsel directly contradicted the State's proof of several elements of the offenses charged by presenting testimony to the effect that the defendant did not point the pistol at the officers and did not carry it on his person. We conclude, then, that counsel's actions did not result in a general and unauthorized plea of the defendant's guilt. We decline to presume that the defendant necessarily was prejudiced by counsel's belief that intoxication could not be raised here as a defense to the charges." (Emphasis added.) *Weir*, 111 Ill. 2d at 338, 490 N.E.2d at 2-3.

Based upon the foregoing authority, I conclude the *Sullivan, Sampson, Ford,* and *Fair* cases, cited by the majority opinion, were all wrongly decided, as is the majority opinion itself. As the majority opinion notes, *defense counsel in the present case "informed the court the parties had agreed to a stipulated set of facts which would support a conviction."* (Emphasis added.) (196 Ill. App. 3d at 154.) This posture of defense counsel does not comport with the supreme court's description of the sort of stipulated bench trial in which the Rule 402(a) admonitions need not be given. Note again that in *Smith*, the supreme court said the following:

"Where the circumstances indicate that calculated efforts have been made which amount to the entry of a guilty plea, we hold that an accused must be afforded the protections set forth by Rule 402." (*Smith*, 59 Ill. 2d at 242-43, 319 N.E.2d at 764.)

In *Thornton*, the supreme court described the trial as a sham when, "the court and defendant's attorney agreed that, regardless of the evidence, the defendant would be found guilty." (*Thornton*, 84 Ill. 2d at 372, 418 N.E.2d at 748.) Also, in *Weir*, the supreme court, in holding that the stipulated bench trial was not tantamount to a guilty plea, emphasized that "the record contains no indication that defense counsel agreed to the defendant's convictions or that the trial became merely a formality." *Weir*, 111 Ill. 2d at 338, 490 N.E.2d at 2.

As the majority opinion makes clear, the defendant's "trial" in the present case was a sham. It was merely a formal proceeding utilized to get defendant convicted so that the real matter at issue, the

police seizure of the drugs, could be litigated on appeal. The exception, however, which the appellate court has carved out of the *Stepheny* rule—that the Rule 402(a) admonitions are not required if a defendant wishes to preserve some *pretrial* issue for appeal—has no basis either in logic or in any decision of the supreme court.

Given the prevalence of plea bargaining throughout this State, the purpose of Rule 402(a) is clear: before a defendant is to be convicted as a result of his guilty plea, the court must do its best to ensure that the defendant understands certain particulars affecting his situation. These particulars are (1) the nature of the charge, (2) the minimum and maximum sentence prescribed by law, (3) that defendant has the right to plead not guilty and to persist in that plea, and (4) that by pleading guilty, defendant is giving up a trial of any kind and the right to be confronted with the witnesses against him. (107 Ill. 2d Rules 402(a)(1) through (a)(4).) The court is directed to achieve this goal, "by addressing the defendant personally in open court, informing him of and determining that he understands" all of the above. 107 Ill. 2d R. 402(a).

When a defendant comes before the court and both the prosecutor and defense counsel have the intention and expectation that defendant is to be convicted, the foregoing provisions of Rule 402(a) ought to apply regardless of how the proceeding may be designated. That defense counsel intends to appeal some pretrial ruling, such as the denial in this case of the motion to suppress, is irrelevant. Defense counsel's intentions do not change the fact that the defendant walked into court presumed to be innocent of the charge against him and left convicted pursuant to his own acquiescence. Under these circumstances, the Rule 402(a) admonitions must be given to ensure that the defendant knows what is going on. After all, ensuring the defendant's *personal* understanding as he voluntarily undergoes the transformation from accused to convicted is the primary purpose underlying Rule 402(a).

To obviate the confusion surrounding stipulated bench trials, a "bright line rule" can and should be adopted. To this end, the following is respectfully offered: a stipulated bench trial is, in all cases, tantamount to a guilty plea, requiring that Rule 402(a) admonitions be given, unless after the stipulation a question remains regarding the *sufficiency* of the State's evidence to sustain a conviction. An example of such a circumstance would be the defense offering to waive a jury trial and stipulate to the entire State's case as set forth in the various police reports, while maintaining that the State fails to meet its burden of proof because all available evidence would be insufficient to

prove beyond a reasonable doubt the venue of the alleged offense. Another example would be a defense stipulation to the entire State's case in a prosecution for unlawful use of weapons, reserving for the trial court's determination the question of whether the State's evidence shows that the defendant was in constructive possession of a gun found under the front seat of a vehicle when the defendant was seated in the backseat. See Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(4).

Specifically excluded from these examples is the situation, such as in the present case, in which the evidence is clearly sufficient to convict the defendant if a pretrial motion to suppress that evidence was properly denied. As stated earlier, preserving for appeal questions regarding the admissibility of evidence ought never be sufficient to overcome the requirement that the Rule 402(a) admonitions be given; that requirement can be overcome only when the *sufficiency*, not the *admissibility*, of the evidence is being challenged.

The "bright line" rule here proposed is similar to the old common law notion of "demurrer to evidence." This term is defined in Black's Law Dictionary as follows: "It is an objection or exception by one of the parties in an action at law, to the effect that the evidence which his adversary produced is insufficient in point of law (whether true or not) to make out his case or sustain the issue." (Black's Law Dictionary 390 (5th ed. 1979).) In effect, if a stipulated bench trial is truly a trial and not a sham, the posture of the defense is to say to the prosecution, "We concede all of the evidence you have presented against us. Now, so what?" Clearly this was not the posture of the defendant in the present case. Instead, the trial court proceedings were in every way the "functional equivalent" of a guilty plea, and the Rule 402(a) admonitions should have been given. The failure to do so was reversible error.

## II. PROOF OF VENUE AS AN ELEMENT OF THE OFFENSE

I agree with the majority opinion that under present Illinois law, the State must prove venue beyond a reasonable doubt. However, I write separately to point out that, in my judgment, this requirement is a long-standing, erroneous application of Illinois law. As I hope to demonstrate, neither the Illinois Constitution nor the Illinois statutes impose this requirement, and this issue should be reconsidered by the Illinois Supreme Court.

### A. THE HISTORY OF THE VENUE-VICINAGE REQUIREMENT

The issue of venue, sometimes known as vicinage, has a long his-

tory in this State and nation. The supreme court of California recently considered the historical development of the "vicinage requirement" as follows:

"The vicinage requirement is derived from English common law and American colonial history. Early English judicial practice required that juries be drawn from the neighborhood where the crime occurred, as jurors were expected to reach a determination based upon their personal knowledge of the facts. [Citation.] Although English juries evolved into bodies to hear the evidence, and previous knowledge became a principal cause for rejecting jurors, jurors nevertheless continued to be drawn from the vicinity of the crime. [Citation.]

The concept of trial by the jury of the vicinage was not brought to the American colonies in any absolute form. [Citation.] The practice of drawing petit jurors from the vicinity of the crime was not uniform within the colonies. [Citation.] However, the principle of trial by a jury of the vicinage gained vitality as a political argument of the American Revolution in response to Parliament's enactment of a series of laws permitting trial in England of crimes of treason committed in the colonies." *Hernandez v. Municipal Court* (1989), 49 Cal. 3d 713, ____, 781 P.2d 547, 550-51, 263 Cal. Rptr. 513, 516-17.

A prominent criminal law treatise contains the following pertinent material on this subject:

"The term 'venue' refers to the place of trial, the particular county or district or similar geographical area within which a case is to be heard. Venue must be distinguished from jurisdiction; the latter has to do with the authority or power of a court to try a case, while the former concerns only the place where the case may be tried. Strictly speaking, venue must also be distinguished from vicinage, a concept which has to do with the place from which the jurors are to be drawn. But because it is seldom provided in the law that a jury may be selected from a locale different from that where the trial is to occur, it is understandable that the venue-vicinage distinction often is not an important one.

'Questions of venue in criminal cases,' it has been noted, 'are not merely matters of formal legal procedure,' for they 'raise deep issues of public policy.' This is because the determination of the place where the case will be tried, if not sufficiently limited, may result in the defendant suffering hardship and unfairness. Concern with this matter goes back to the origins of this

country; the Declaration of Independence denounced George III 'for transporting us beyond Seas to be tried for pretended offences.' It is not surprising, therefore, that the Framers of our Constitution deemed it necessary to provide that '[t]he trial of all Crimes \*\*\* shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.' Also relevant here, though strictly speaking it is a vicinage provision, is the Sixth Amendment guarantee of a criminal trial 'by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.' Most state constitutions also contain provisions on venue, typically providing that criminal cases must be tried in the county, district or parish in which the crime was committed." 2 W. LaFave & J. Israel, Criminal Procedure §16.1(a), at 334-35 (1984).

B. ILLINOIS CONSTITUTIONAL PROVISIONS PERTAINING TO VENUE

The State of Illinois has had four constitutions: 1818, 1848, 1870, and 1970. Each of them contains provisions regarding rights guaranteed to citizens accused of crimes.

Section 9 of article VIII of the Constitution of 1818 reads as follows:

"That in all criminal prosecutions, the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his favor; and in prosecutions by indictment or information, *a speedy public trial by an impartial jury of the vicinage,* and that he shall not be compelled to give evidence against himself." (Emphasis added.) Ill. Const. 1818, art. VIII, §9.

On the same subject, the Constitution of 1848 provided the following:

"That in all criminal prosecutions the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his favor; and in prosecutions by indictment or information, a speedy public trial by *an impartial jury of the county or district wherein the offense shall have been commit-*

*ted, which county or district shall have been previously ascertained by law,* and that he shall not be compelled to give evidence against himself." (Emphasis added.) Ill. Const. 1848, art. XIII, §9.

The Constitution of 1870 states the following:

"In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation and to have a copy thereof, to meet the witnesses face to face, and to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by *an impartial jury of the county or district in which the offense is alleged to have been committed.*" (Emphasis added.) Ill. Const. 1870, art. II, §9.

Last, the Constitution of 1970 provides the following:

"In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation and have a copy thereof; to meet the witnesses face to face and to have process to compel the attendance of witnesses in his behalf; and to have a speedy public trial by *an impartial jury of the county in which the offense is alleged to have been committed.*" (Emphasis added.) Ill. Const. 1970, art. I, §8.

### C. ILLINOIS STATUTORY PROVISIONS PERTAINING TO VENUE

Section 1—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 1—6) sets forth the Illinois statutory provision concerning venue in criminal cases. That section reads as follows:

"Place of trial. (a) Generally. Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law. All objections of improper place of trial are waived by a defendant unless made before trial.

(b) Assailant and Victim in Different Counties.

If a person committing an offense upon the person of another is located in one county and his victim is located in another county at the time of the commission of the offense, trial may be had in either of said counties.

(c) Death and Cause of Death in Different Places or Undetermined.

If cause of death is inflicted in one county and death ensues in another county, the offender may be tried in either county. If neither the county in which the cause of death was inflicted nor the county in which death ensued are known before trial, the

offender may be tried in the county where the body was found.

(d) Offense Commenced Outside the State.

If the commission of an offense commenced outside the State is consummated within this State, the offender shall be tried in the county where the offense is consummated.

(e) Offenses Committed in Bordering Navigable Waters.

If an offense is committed on any of the navigable waters bordering on this State, the offender may be tried in any county adjacent to such navigable water.

(f) Offenses Committed while in Transit.

If an offense is committed upon any railroad car, vehicle, watercraft or aircraft passing within this State, and it cannot readily be determined in which county the offense was committed, the offender may be tried in any county through which such railroad car, vehicle, watercraft or aircraft has passed.

(g) Theft.

A person who commits theft of property may be tried in any county in which he exerted control over such property.

(h) Bigamy.

A person who commits the offense of bigamy may be tried in any county where the bigamous marriage or bigamous cohabitation has occurred.

(i) Kidnaping.

A person who commits the offense of kidnaping may be tried in any county in which his victim has traveled or has been confined during the course of the offense.

(j) Pandering.

A person who commits the offense of pandering may be tried in any county in which the prostitution was practiced or in any county in which any act in furtherance of the offense shall have been committed.

(k) Treason.

A person who commits the offense of treason may be tried in any county.

(*l*) Criminal Defamation.

If criminal defamation is spoken, printed or written in one county and is received or circulated in another or other counties, the offender shall be tried in the county where the defamation is spoken, printed or written. If the defamation is spoken, printed or written outside this state, or the offender resides outside this state, the offender may be tried in any county in this state in which the defamation was circulated or received.

(m) Inchoate Offenses.

A person who commits an inchoate offense may be tried in any county in which any act which is an element of the offense, including the agreement in conspiracy, is committed.

(n) Accountability for Conduct of Another.

Where a person in one county solicits, aids, abets, agrees, or attempts to aid another in the planning or commission of an offense in another county, he may be tried for the offense in either county.

(o) Child Abduction.

A person who commits the offense of child abduction may be tried in any county in which his victim has traveled, been detained, concealed or removed to during the course of the offense. Notwithstanding the foregoing, unless for good cause shown, the preferred place of trial shall be the county of the residence of the lawful custodian."

### D. PRESENT ILLINOIS LAW REGARDING VENUE

Numerous cases hold that every defendant has the right to be tried in the county in which the crime allegedly occurred. Both the Illinois Constitution and statutes require this result. The question I raise is, how does this right manifest itself? In other words, is this a substantive right or a procedural right? Present Illinois law holds that this is a substantive right. For the following reasons, I conclude this holding is erroneous.

In the context of venue, the determination as to whether a defendant's right to be tried in the county in which the crime allegedly occurred is procedural or substantive can have profound results: If this venue right is substantive, then the State must prove venue as an element of the offense beyond a reasonable doubt; if this right is procedural, then venue need not be proved at trial.

The defendant's right to be tried in the county in which the crime allegedly occurred should mean that the defendant has both the opportunity and the obligation before trial in a criminal case to call to the trial court's attention his claim that the case is pending in the wrong county. Placing this responsibility upon a defendant is not inconsistent with his presumption of innocence because this responsibility in no way requires him to testify. Instead, he should present to the trial court any reliable and trustworthy documentation he may have, including police reports and statement of witnesses, that suggest venue properly lies in some other county. Given modern discovery requirements and practices, most, if not all, documents in a prosecutor's

file must be tendered to the defense prior to trial. Accordingly, requiring the defendant to complain about venue seems less onerous now than it ever was.

The seriousness with which the trial courts would consider a defendant's motion to change venue is best shown by the motion's underlying constitutional basis. Trial courts can be expected to treat such motions with great care. Improperly denying a defendant's motion to transfer a prosecution from one county to another due to improper venue would *in all cases* constitute reversible error, just as *in all cases* reversible error occurs when the trial court improperly denies a defendant's motion for substitution of judge under section 114—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—5). *People v. Ash* (1985), 131 Ill. App. 3d 644, 476 N.E.2d 13.

If a defendant challenges the venue of a pending charge and the court, based upon the materials presented to it, determines that venue is not proper in the challenged county, then the trial court might, for example, address defense counsel essentially as follows:

> "Counsel, I think your motion is well taken, and I am prepared to grant it. Based on the materials before me, it appears that the county of X is the proper venue in this case, and therefore I am prepared to have this prosecution transferred to county X. Do you have any objection to my doing so? If you have any objection, now is your opportunity to state your grounds."

If needed, further discussion could then take place between the court and counsel to ensure that the defendant is, in fact, being tried in the county in which the crime allegedly occurred.

*It makes no sense, and it never did, to say that because a defendant has a right to be tried in the county in which the crime allegedly occurred, the State must therefore prove beyond a reasonable doubt that the alleged offense in fact occurred in that county.*

Article I of the Illinois Constitution of 1970, the "Bill of Rights" article, contains several provisions which constitute procedural safeguards for persons accused of crime. They are as follows:

> "No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause." Ill. Const. 1970, art. I, §7.

> "In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel[.]" Ill. Const. 1970, art. I, §8.

"[In criminal prosecutions, the accused shall have the right] to demand the nature and cause of the accusation ***[.]" Ill. Const. 1970, art. I, §8.

"[In criminal prosecutions, the accused shall have the right to] have a copy [of the accusation.]" Ill. Const. 1970, art. I, §8.

"[In criminal prosecutions, the accused shall have the right] to meet the witnesses face to face ***[.]" Ill. Const. 1970, art. I, §8.

"[In criminal prosecutions, the accused shall have the right] to have process to compel the attendance of witnesses in his behalf[.]" Ill. Const. 1970, art. I, §8.

"[In criminal prosecutions, the accused shall have the right] to [a] have a speedy public trial[,] [b] by an impartial jury[,] [c] of the county in which the offense is alleged to have been committed." Ill. Const. 1970, art. I, §8.

"All persons shall be bailable by sufficient sureties, except [under certain limited circumstances]." Ill. Const. 1970, art. I, §9.

"No person shall be compelled in a criminal case [a] to give evidence against himself [b] nor be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10.

"The right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, §13.

"No ex post facto law *** shall be passed." Ill. Const. 1970, art. I, §16.

As this list of rights makes clear, venue rights are treated no differently than other rights contained in these constitutional provisions. Yet the bench, the bar, and jurors would think it most peculiar if, in an otherwise routine aggravated criminal sexual assault case, the jury received, for example, the following issues instruction:

"To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:

*First*: That the defendant committed an act of sexual penetration upon [complainant]; and

*Second*: That the act was committed by the use of force or threat of force, and that [complainant] did not consent to the act of sexual penetration; and

*Third*: That the defendant performed the acts in _____ county [the county where the offense allegedly occurred]; and

*Fourth*: **That the defendant has been given a prompt preliminary hearing to establish probable cause; and**

*Fifth*: **That the defendant has been furnished a speedy pub-**

lic trial; and

*Sixth*: That the jury deciding this case is impartial; and

*Seventh*: That the defendant has not been compelled to give evidence against himself; and

*Eighth*: That the defendant has not twice been put in jeopardy for the same offense.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Modifications to instruction in bold.) (Illinois Pattern Jury Instructions, Criminal, No. 11.34, at 172-74 (2d ed. Supp. 1989).)

While this "modified" jury instruction may seem absurd, it makes the distinction between procedural and substantive rights apparent. As important as are the rights specified in propositions four through eight, their presence in an issues instruction would seem totally inexplicable. If that is so, then why is it any less inexplicable for the third proposition (regarding venue) to be present? Yet that third proposition under present Illinois law must be added to the issues instruction when the venue of a particular charge has been challenged or the evidence thereof is uncertain or in conflict.

That the rights specified in propositions four through eight are not included in issues instructions in no way diminishes their significance or importance. Instead, these rights address *procedural* concerns which are often of as great or greater significance than substantive concerns. As an example, if a defendant has not received the speedy public trial to which he is entitled, then the State need not worry about that right being included as an element of the issues instruction; instead, the violation of that right becomes a bar to the prosecution. Convictions obtained in violation of other significant constitutional procedural rights would similarly be reversed and remanded for a new trial or simply reversed outright.

As with venue, factual issues concerning the other particular procedural rights set forth in propositions four through eight of this "modified" jury instruction often arise. For instance, there may be a question of fact as to whether defendant has been given a prompt preliminary hearing to establish probable cause; or as to whether defendant has been afforded a speedy public trial; or as to whether the jury trying the case is impartial; or as to whether defendant has been compelled to give evidence against himself. Last, of course,

there may be a question of fact as to whether the case is being tried in the county in which the offense is alleged to have been committed. None of these questions of fact, however, except for the one pertaining to venue, is, under Illinois law, deemed to be a proper question for jury resolution. I see no principled basis for singling out venue for this purpose.

Exactly when the notion that venue was an element of the offense became part of the fabric of Illinois law is not at all certain. In the first case on this issue, *Rice v. People* (1865), 38 Ill. 435, the defendant had been convicted in McLean County of selling liquor without a license. One of the grounds of his appeal to the Illinois Supreme Court was that there was no evidence that the offense was committed in McLean County. The court said the following:

> "[T]he motion for a new trial should have been allowed, as it does not appear, from the testimony, all of which is preserved in the record, where the offense was committed; it might have been in another state for aught that is disclosed by the record.
>
> * * *
>
> For refusing to set aside the verdict and grant a new trial, the judgment is reversed, *and the cause remanded.*" (Emphasis added.) *Rice*, 38 Ill. at 436.

What is particularly significant about this decision is that the supreme court viewed the failure of the evidence to show the offense was committed in McLean County as a *procedural* defect, the appropriate remedy for which was to reverse *and remand for a new trial.* Had the supreme court viewed venue as an element of the offense to be proved by the State beyond a reasonable doubt, remand for a new trial would not have been appropriate. Instead, as now, an outright reversal would have been the appropriate order, effectively acquitting the accused.

That the result in *Rice* was no aberration is shown by its repetition in similar cases. In *Jackson v. People* (1866), 40 Ill. 405, the defendant was found guilty of knowingly receiving stolen goods in Cook County. The *entire* decision of the supreme court is as follows:

> "Per Curiam: In this case the record wholly fails to show that the offense of which the plaintiff in error was found guilty, to wit, knowingly receiving stolen goods, was committed in the county of Cook, and State of Illinois. We must therefore reverse the judgment, *and remand the case for another trial.*" (Emphasis added.) *Jackson*, 40 Ill. at 406.

In *Sattler v. People* (1871), 59 Ill. 68, the defendant was convicted in Clinton County of malicious mischief. On appeal, the supreme court

determined that an instruction requested by the defendant, which the court refused, should have been given. The court also stated the following:

> "There seems to be a defect in the proof as to the county in which the offense was committed. This is fatal. [*Rice v. People*, 38 Ill. 436.]
>
> For the reasons given, the judgment must be reversed *and the cause remanded.*" (Emphasis added.) *Sattler*, 59 Ill. at 70.

In *Buckrice v. People* (1884), 110 Ill. 29, the supreme court, for the first time, departed from its previous practice of reversing *and remanding* when it found evidence of venue to be insufficient. In *Buckrice*, the defendant was charged in Kane County with illegally selling liquor. He actually sold the liquor in Cook County, but at a point within 70 rods of the line dividing Cook County from Kane County. Defendant challenged the jurisdiction of the Kane County circuit court, but that court denied his challenge, finding it had authority under a statute which read as follows: "Where an offence shall be committed on a county line, or within one hundred rods of the same, it may be so alleged and the trial may be in either county divided by such line." (Ill. Rev. Stat. 1874, ch. 38, par. 5, div. 10.) Defendant was convicted and he appealed.

The supreme court found the statute to be in violation of article II, section 9, of the Illinois Constitution of 1870. (*Buckrice*, 110 Ill. at 34-35.) The supreme court reversed defendant's conviction outright and made no mention of a remand.

The supreme court addressed the question of venue in great detail in *Watt v. People* (1888), 126 Ill. 9, 18 N.E. 340. In *Watt*, defendant and his accomplices were convicted in Grundy County of murder. Five counts of the six-count indictment charged the offense in the usual form, alleging the commission by the defendants of the crime charged on March 13, 1866, in Grundy County. However, one count alleged that the murder was committed on March 13, 1866, " 'in and upon a railroad car passing over the Chicago, Rock Island and Pacific railway, a railroad in the State aforesaid, which said car came into said county of Grundy and State aforesaid, on the day aforesaid.' " *Watt*, 126 Ill. at 13, 18 N.E. at 341.

The deceased was a messenger on his way from Chicago to Davenport, Iowa, taking his usual route over the railroad through Will and Grundy Counties. His train left Chicago at 11 p.m. on March 12, 1886. At 12:45 a.m. on March 13, the deceased was seen alive and in the discharge of his duties when the train reached Joliet in Will County. About 45 minutes later, when the train reached Morris in

Grundy County, the deceased was found dead on the floor of the baggage car in which he was riding. The evidence showed the murder was committed pursuant to a plan to rob the deceased. I quote extensively from the decision and concurring opinion in *Watt* because they constitute the most detailed analysis to date by the supreme court of the issue of venue.

The supreme court in *Watt* stated the following:

"The line dividing Will and Grundy counties is about midway between Joliet and Morris. No witness saw the homicide, and it is impossible to determine from the evidence, whether it was committed while the car was in the county of Will or after it had crossed the line into the adjoining county of Grundy. The first question presented by the assignments of error is, whether, under these circumstances, the circuit court of Grundy county had jurisdiction of the offense.

By section 4, division 10, of the Criminal Code, it is provided that, 'the local jurisdiction of all offenses not otherwise provided for by law, shall be in the county where the offense was committed.' Section 6 of the same division provides that, 'if the party killing shall be in one county and the party killed be in another county at the time the cause of death shall be administered or inflicted, or if it is doubtful in which of several counties the cause of death was administered or inflicted, the accused may be tried in either county.' Section 11 is as follows: 'Where any offense is committed in or upon any railroad car passing over any railroad in this State, or on any water-craft navigating any of the waters within this State, and it can not readily be determined in what county the offense was committed, the offense may be charged to have been committed and the offender tried in any of the counties through or along or into which such railroad car or water-craft may pass or come, or can reasonably be determined to have been, on or near the day when the offense was committed.'

It is manifest that the provisions of either the 6th or 11th sections of the statute above quoted are broad enough to cover the present case. The cause of death was inflicted in either Will or Grundy county, but in which the evidence leaves it wholly in doubt. The offense was committed on a railroad car passing over a railroad in this State, and while it is shown to have been committed in one of two counties through which the car passed, it is impossible to determine in which with any degree of certainty. But it is insisted that the constitution secures to

every person accused of a criminal offense the right to a trial by an impartial jury of the county in which the offense was committed, and that the foregoing sections of the statute, being in derogation of that constitutional right, are void. At common law all criminal offenses are deemed to be local and subject to prosecution only in the county where they were committed. In the early ages of English jurisprudence jurors who were impanelled to try either civil or criminal causes were themselves the witnesses, and rendered their verdicts upon their own knowledge, and therefore, in order that they might be qualified to perform their functions, they were summoned from the *visne* or neighborhood of the place where the matter to be tried arose. When at a later period they were required to find their verdicts upon the evidence of witnesses, it was still deemed important that they should come from the place where the witnesses lived and where the dispute originated, since jurors from the *visne* or neighborhood were regarded as more likely to be qualified to investigate and determine the truth than persons living at a distance from the scene of the transaction. It thus became a settled rule of the common law that persons accused of criminal offenses should have a right to be tried by a jury of the *visne* of the alleged crime. Though originally more limited, the *visne* or neighborhood came to be understood to be the county where the offense was committed, and such was its signification at common law at the time that system of jurisprudence was adopted in this State. 1 Chitty's Crim. Law, 177; 3 Reeve's Hist. of Eng. Law, 476; 4 Black. Com. 349.

Undoubtedly the right to a trial by a jury of the county in which the crime charged was committed is ordinarily a substantial and important legal right. It secures to the accused a trial among his neighbors and acquaintances, and at a place where, if innocent, he can most readily make that fact to appear. But it is difficult to see how that can be the case where the offense is committed on a railway train, and the circumstances are such that it can not be definitely located in any one of several counties through which the train passes. Those who are on the train are for the time being completely segregated from the communities through which they are rapidly passing, and there is ordinarily no circumstance which can make it more advantageous for a person accused of such crime to be tried in one county than in another. The right in such case to a trial in a particular county, if it exists at all, is at best a technical right,

having no substantial importance or value to the accused.

Whenever the *locus in quo* of the offense can be precisely identified, under the provisions of the section of the statute first above quoted, the trial should of course be had in the county where it was committed, but when such is not the case a somewhat different rule must be applied or the offender can not be tried at all. When it can not be determined in which of two or more counties the criminal act was perpetrated, the offender must, *ex necessitate*, be tried in a county which can not be proved beyond a reasonable doubt to be the actual *visne* of the crime. If he can not be so tried the law is powerless to punish him. The evidence of his guilt may be never so conclusive, but because of the impossibility of proving upon which side of an imaginary line the swiftly moving train happened to be at the instant the homicidal blow was struck, the murderer must be given complete practical immunity from all the penal consequences of this heinous offense. No court should adopt a construction of the law which would involve consequences of this character unless forced to do so by considerations which are insurmountable.

The phraseology of that section of our present constitution which relates to the place of trial in criminal prosecutions differs materially in one respect from that of the corresponding provisions of the constitutions of 1818 and 1848. The constitution of 1818 provided that, in all criminal prosecutions, the accused should have a right to 'a speedy public trial by an impartial jury of the vicinage;' and the constitution of 1848 provided that he should have a right to 'a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed.' It must be admitted, probably, that both these constitutional provisions were susceptible of but one construction, viz., that of limiting jurisdiction in all criminal prosecutions absolutely to the county where the crime alleged was actually committed. The framers of our present constitution, recognizing, as we may assume, the infirmity of this rule, particularly in its application to cases like the present where it is impossible to determine in which of two or more counties a particular crime was committed, revised the section so as to make it read as follows: 'In all criminal prosecutions the accused shall have a right to *** a speedy public trial by an impartial jury of the county or district in which the offense *is alleged* to have been committed.' This modified phraseology may fairly be re-

garded as evidencing an intention to relax in some degree the rigid rule formerly prevailing. The prosecution may now be had in the county where the offense is *alleged* to have been committed. The allegation here referred to is doubtless that made by the indictment, that being the only document in which the proper allegations as to the vicinage of the crime are ordinarily made. The constitution then may be regarded as empowering the General Assembly to provide, in its discretion, for the presentment of indictments in which the allegation as to the vicinage of the offense may not be in accordance with the actual fact. If this is not so, the words inserted in the present constitution are meaningless, and the instrument must be interpreted precisely as though they had not been used.

While at common law and by the rule established by both our former constitutions criminal offenses were regarded as strictly local, and subject to prosecution only in the counties where they were committed, our present constitution vests in the General Assembly the power to change that rule to such extent as it may see proper. It may now determine by law when offenses are to be deemed to be local, and when and within what limitations they are to be treated as transitory. The General Assembly has accordingly, in the first section of the statute above quoted, established the general rule that jurisdiction of criminal offenses shall be local, unless otherwise provided by law, and in the other sections quoted provision is made for the cases where it is doubtful or can not be readily determined in which of several counties the offense is committed, and there, as between such counties, the offense is made transitory.

The crime charged in the indictment in the present case having been committed under circumstances which render it transitory as between Will and Grundy counties, the prosecution was properly instituted in Grundy county, and the offense is properly alleged to have been committed in that county. Proof of the commission of the offense in one or the other of those counties, but under circumstances which make it doubtful or difficult to determine in which, is sufficient proof of the allegation that it was committed in Grundy county. It is unnecessary for us to determine whether the second count of the indictment, in which the fact that the homicide was committed on a railroad car passing over a railroad in this State and coming into Grundy county is specially pleaded, is sufficient to sustain

the conviction or not, as the other five counts are clearly sufficient, and their allegation as to the venue of the crime is sustained by sufficient and competent evidence." *Watt*, 126 Ill. at 15-19, 18 N.E. at 342-44.

A separate opinion, concurring in part and dissenting on the interpretation of venue, was filed by Justice Scholfield. That opinion reads as follows:

"I concur in affirming this judgment, but I dissent from that part of the opinion of Mr. Justice Bailey which assumes to give construction to section 9, article 2, of our present State constitution. I do not agree that the words, 'jury of the county or district in which the offense is alleged to have been committed,' as used in that article, were intended to, or that, when properly construed, they do, convey a different legal meaning, in the respect pertinent in this case, than that conveyed by the words, 'jury of the county or district wherein the offense shall have been committed,' as used in section 9, article 13, of the constitution of 1848.

It is assumed (and rightfully,) that 'alleged' means as charged or stated in the indictment or information. It will be observed that while this clause describes the place or locality whence the jury are to come, it goes no farther. It makes no specific provision for cases where the crime is, in fact, committed in one county, but is, incorrectly, alleged to have been committed in a different county. It prescribes no rule of evidence, and it does not assume to authorize judgment to be rendered in favor of an allegation which is contrary to the fact proved upon the trial.

The constitution provides, (sec. 8, art. 2): 'No person shall be held to answer for a criminal offense, unless on an indictment of a grand jury.' But it nowhere undertakes to define what is meant by this language. That we learn by resorting to the common law. There we are informed that 'the grand jury are sworn to inquire only for the body of the county, *pro corpora comitatus*, and therefore they can not regularly inquire of a fact done out of that county for which they are sworn, unless particularly enabled by act of Parliament.' 4 Blackstone's Com. (Sharswood's ed.) 302, 303. There were on our statute book, when the present constitution was adopted, it is true, provisions, 'that where an offense shall be committed on a county line, the trial may be in either county divided by such line,' and that 'where any offense shall be committed against the person

of another, and the person committing the offense shall be in one county, and the person receiving the injury shall be in another county, the trial may be had in either of said counties.' And, by necessary implication, it must follow that the grand jury of each of such counties has jurisdiction to indict for the offense. But these provisions are palpably framed upon the theory, that in such cases the offense is actually committed in both counties,—that there are material criminal acts committed in each county, sufficient, of themselves, to constitute the offense; and they can therefore have no pertinency to the present question.

We are also informed by the common law, that the facts constituting the crime presented must be alleged, in the indictment, as having been committed where they were actually committed. 1 Chitty on Crim. Law, 195; 1 Wharton on Crim. Law, (7th ed.) 277; 1 Bishop on Crim. Proc. sec. 104. See, also, Gross' Stat. 1869, p. 199, sec. 1. And if the proof fails to sustain the allegation in this respect, the verdict must be for the defendant. 1 Bishop on Crim. Proc. 107; 1 Wharton on Crim. Law, (7th ed.) 601. 'The county where the offense is alleged to have been committed,' must therefore be the county where the offense is actually committed. There is no authority to allege any other county than that in which the offense was actually committed, and so, in legal contemplation, the words employed in the present constitution, and those employed in that of 1848, in this respect, intend the same thing.

Undoubtedly, under the provision of the present constitution a party indicted by a grand jury of that county for an offense as having been committed within a designated county, is entitled to be tried, under that indictment, by a petit jury of that county. But the county where the offense was committed being of the substance of the offense charged in the indictment, if the proof fails to show an offense committed within the county, as alleged, the offense charged in the indictment is not proved; and this clause of the constitution does not assume to confer authority upon the jury to then, notwithstanding this failure of proof, convict the defendant of an offense similar in kind to that charged in the indictment, but committed in a different county from that alleged; or, stated in different language, while this clause confers upon the defendant the right to be tried by a jury of the county where the offense is alleged to have been committed, it confers no authority upon that jury to convict

him of an offense actually committed, and sufficiently so proved upon the trial, in a county different from that alleged. Moreover, it appears, not only from the language, but likewise from the connection in which it occurs, that the purpose here was to protect the individual against oppression—against being taken for an offense committed in one county, and transported to a remote county, and there forced to be tried, thus imposing upon him heavy expenses to procure the attendance of witnesses, etc., and denying him the presence of friends. But under the construction adopted in Mr. Justice Bailey's opinion, what guaranty has the citizen in Alexander county that he will not be indicted and transported to Jo Daviess county, and there forced to trial for an offense actually committed in Alexander county? If a grand jury of Jo Daviess county were ignorant or malicious, or corrupt enough to allege in an indictment that an offense proved to have been actually committed in Alexander county was committed in Jo Daviess county, the defendant would seem, under that opinion, to be without remedy. But, in that view, why was this provision adopted? A personal right for the protection of the individual against oppression can not rest in an arbitrary and irresponsible discretion of a grand jury. The one is utterly repugnant and irreconcilable with the other.

Assuming that I am right in the views just expressed, I am nevertheless of opinion that section 402, of division 10, of the Criminal Code, (Rev. Stat. 1874, p. 407,) may still be sustained as a constitutional and valid enactment. The right guaranteed to the defendant is that of trial by an impartial jury of the county. Whether the burthen of showing that he has not been deprived of that right shall rest upon the People, wholly or only in part, or whether the burthen shall rest upon him to show that he has been deprived of that right, are questions with which the constitution does not deal. Having guaranteed the right, it leaves all questions of detail as to the mode of ascertaining when it shall have been violated, to the legislature, and manifestly, therefore, the question of where the burthen of proof, in this respect, shall in the first instance rest, is purely one of legislative policy. See Cooley's Const. Lim. (1st ed.) 288. Under this section, if it can 'readily be determined in what county the offense was committed,' the offense must be charged to have been committed and the offender be tried in that county, for this is the plain and obvious meaning of the language employed; but 'if it can not readily be determined in

what county the offense was committed, the offense may be charged to have been committed and the offender tried in any of the counties through or along or into which such railroad car or water-craft may pass or come, or can reasonably be determined to have been on or near, the day when the offense was committed.' Since, therefore, it is competent for the General Assembly to say, in the first instance, every offense shall be presumed to have been committed in the county alleged in the indictment, unless the defendant shall prove otherwise, it is unquestionably competent for it to say, as is, in effect, here said, that proof showing 'that it can not readily be determined in which county the offense was committed,' shall be sufficient evidence that it was committed in the county alleged. The burden is here, by the well settled rules of pleading and evidence, upon the State, in default of specific proof of the venue of the alleged offense, to prove 'that it can not readily be determined in what county the offense was committed,' and 'that which the People are required to prove, the defendant is at liberty to disprove.' And so, if he is, by the trial, being denied his constitutional right of trial by a jury of the vicinage, he can establish that fact by proving the actual venue of the offense, and thus enable the State to proceed against him anew in the proper county, where he will have that right. This right is a purely personal right, which the defendant is at liberty to waive if he shall choose to do so, and so long as, by change of statute, he is not denied the opportunity to assert it, he has no right to complain.

The evidence here clearly makes the *prima facie* case, upon behalf of the People, contemplated by the statute. The defendant had the opportunity to disprove that case, but failed to do so. It is therefore to be assumed the offense was actually committed in the county alleged, and where the defendant was indicted and tried and convicted." *Watt*, 126 Ill. at 32-37, 18 N.E. at 350-53 (Scholfield, J., concurring and dissenting in part).

It should be noted that the provision of the Constitution of 1870 regarding venue is almost precisely the same as that of the Constitution of 1970. (Compare Ill. Const. 1870, art. II, §9, with Ill. Const. 1970, art. I, §8.) Given the *Watt* court's definitive analysis and the conclusions reached therein, it is difficult to understand how, 100 years later, the courts find themselves in the position where proof of venue has become an element of the offense. Consider the following portion of the holding in *Watt*:

"Whenever the *locus in quo* of the offense can be precisely identified, under the provisions of the section of the statute first above quoted, the trial should of course be had in the county where it was committed, *but when such is not the case a somewhat different rule must be applied or the offender can not be tried at all.* \*\*\* *If he can not be so tried the law is powerless to punish him.*" (Emphasis added.) *Watt*, 126 Ill. at 17, 18 N.E. at 343.

The above-quoted language appropriately interprets the State constitutional provision concerning venue as being a procedural rule of preference, not a substantive requirement upon the State, resulting in an acquittal because this technical hurdle could not be overcome. The concurring opinion in *Watt* conclusively demonstrates that the majority of the court was fully appraised of claims that its opinion was not consistent with common law tradition. Yet the majority opinion stands, and it has never been explicitly overruled.

In *Graham v. People* (1899), 181 Ill. 477, 55 N.E. 179, the defendant was charged in Perry County with feloniously attempting to obtain money from the victim "by use of the confidence game." (*Graham*, 181 Ill. at 485, 55 N.E. at 180.) After a lengthy analysis of the statutes under which the prosecution was brought, the supreme court concluded that the prosecution should have been instituted in Alexander County, not in Perry County. The court was also critical of an instruction which "virtually told the jury, that it made no difference whether the money was obtained by means of the confidence game in Alexander county or not, if there was a failure to obtain it in Perry county. In this respect the instruction was clearly erroneous." (*Graham*, 181 Ill. at 494, 55 N.E. at 183.) Given these deficiencies, the action of the supreme court is significant: it reversed the judgment and remanded "for further proceedings in accordance with the views here expressed." (*Graham*, 181 Ill. at 494, 55 N.E. at 183-84.) Again, the supreme court, finding a failure to prove appropriate venue, chose not to reverse outright, but instead reversed and remanded for a new trial.

The first hint from the supreme court that proof of venue was a substantive element of the charge appears to arise in *People v. Kubulis* (1921), 298 Ill. 523, 131 N.E. 595. The four defendants in *Kubulis* were charged with breaking into a freight car in Kankakee County and stealing cloth valued at over $2,000. The evidence was entirely circumstantial. The court noted that there was no direct evidence that a larceny was committed in Kankakee County or that the goods were ever in Kankakee County. Instead, "the whole case of the prosecution is based upon the supposed possession by the defendants of the stolen

property soon after it was stolen." *Kubulis*, 298 Ill. at 527, 131 N.E. at 597.

On appeal, the defendants complained of an instruction concerning their possession of the stolen property soon after the theft. The supreme court stated the following with regard to this instruction:

"[This instruction] purported to direct the jury as to all the facts required to be proved to authorize a verdict, and it was therefore necessary that no element essential to be proved should be omitted. It was not enough to prove that a larceny and burglary had been committed, but it was also necessary to prove that the crime had been committed in the county of Kankakee. *The venue must be proved beyond a reasonable doubt equally with any other fact in the case,* but the instruction improperly assumes that the crime, if proved to have been committed, was committed in Kankakee county. This was not an admitted fact in the case and should not have been assumed in the instruction." (Emphasis added.) *Kubulis,* 298 Ill. at 528, 131 N.E. at 597.

Because the court found that certain instructions were not properly given, its judgment was to reverse and remand for a new trial.

In *People v. Strook* (1932), 347 Ill. 460, 179 N.E. 821, the defendant was convicted in Cook County of burglary of premises at a certain address on South Chicago Avenue. One of defendant's grounds on appeal was that venue was not proved. The supreme court agreed, finding that the proof of venue was not shown beyond a reasonable doubt. The court concluded its decision as follows:

"For the sole reason that all the facts proved in the record were insufficient to establish the venue—that is, to prove that the offense was committed in the county of Cook and State of Illinois—the judgment of the criminal court of Cook County is reversed and the cause is remanded." *Strook,* 347 Ill. at 467, 179 N.E. at 823.

I find it difficult to reconcile *Strook* with those cases cited by the majority in this case, which hold that not only is venue an element of the offense that must be proved beyond a reasonable doubt, but that venue may even be raised by the defendant for the first time on appeal. As the supreme court emphasized in *Strook,* the *sole* reason for the reversal and remandment was that the facts proved in the record were insufficient to establish venue. If the more recent cases cited by the majority are correct that venue is an element of the offense to be proved beyond a reasonable doubt, then what was there in *Strook* to be done on remand? Certainly by 1932, the Illinois Supreme Court un-

derstood that when records on appeal reveal the State failed to prove one or more elements of the charge beyond a reasonable doubt, the appropriate result is outright reversal. In a hypothetical murder case, for example, if the evidence in the record on appeal was insufficient, in the supreme court's judgment, to prove beyond a reasonable doubt that defendant performed the acts which caused the death of the decedent, the appropriate response is not to reverse and remand in order to give the State a second chance, but to reverse outright. If venue is in fact an element, then, as with the identification of the defendant as the person who caused the death of decedent, the failure to prove venue should similarly result in no remandment.

The issue of venue in criminal cases ought to be handled precisely as that issue is handled in civil cases. In *In re Estate of Willavize* (1960), 21 Ill. 2d 40, 171 N.E.2d 21, the supreme court had a venue issue before it and stated the following:

> "This matter proceeded to hearing on the petition to probate and on the testimony of the attesting witnesses to the effect that the deceased was a resident of Marshall County without any objection on the part of the appellants. Since the Probate Act provision above referred to is a venue provision and since this matter proceeded to a hearing and a final order in a court of competent jurisdiction without the question of venue having been properly raised in apt time by the appellants, then the question was waived." *Willavize*, 21 Ill. 2d at 43-44, 171 N.E.2d at 23.

In point of fact, section 1—6 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1—6) *already* so states: "All objections of improper place of trial are waived by a defendant unless made before trial." As earlier stated, the legislature has never formally provided that proof of venue is an element of any offense. I submit that the language from section 1—6 of the Code is inconsistent with any such intention on the part of the legislature. After all, how could the legislature have intended venue to be an element of an offense and still provide that unless an objection is raised prior to trial, any issue of improper venue is waived? This is simply not the treatment accorded by the legislature to factual issues it wishes to include as elements of offenses.

The blame for the rule declaring that venue is an element of a criminal charge belongs entirely to the judiciary. Just as the judiciary is responsible for this interpretation of Illinois law, it can and should undo it. There are costs for not doing so. Earlier in this discussion of the venue requirement, an instruction from a hypothetical case of ag-

gravated criminal sexual assault was set out. I chose that instruction because I believe it is simply a matter of time before a case will arise in which some terrible crime of violence has been committed, such as a rape, and even though the evidence concerning the defendant's commission of that offense may be literally undisputed, the defendant will be acquitted solely because the crime occurred in some setting in the country which, after the fact, could not be located, or which may have been at or close to the borders of two or more counties. In this scenario, solely because the State would be unable to prove in which county the vicious crime occurred, the perpetrator would go completely unpunished. When these events come to pass, the citizens of this State will likely be outraged, as they should be. We will then have come full circle, back 102 years, to a realization of the fears expressed in 1888 by Justice Bailey in the majority opinion for the court in *Watt*:

> "When it can not be determined in which of two or more counties the criminal act was perpetrated, the offender must, *ex necessitate*, be tried in a county which can not be proved beyond a reasonable doubt to be the actual *visne* of the crime. If he can not be so tried the law is powerless to punish him. *** No court should adopt a construction of the law which would involve consequences of this character unless forced to do so by considerations which are insurmountable." *Watt*, 126 Ill. at 17, 18 N.E. at 343.