(No. 13947.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK KUBULIS *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*venue, as well as any other fact, must be proved beyond reasonable doubt—instruction.* In a trial for burglary and larceny the venue must be proved beyond a reasonable doubt equally with any other fact in the case, and where it is not proved that the crime was committed in the county where the venue is laid it is error to give an instruction which assumes that the venue was proved.

2. SAME—*what must be contained in instruction which directs a verdict.* An instruction which authorizes the jury to find the defendant guilty if they believe from the evidence that the facts stated in the instruction have been proved is erroneous if it omits a fact the proof of which is essential to the establishment of guilt.

3. SAME—*possession of stolen property must be recent to be evidence of theft.* Where the possession of stolen property by the defendant is so remote after the theft as to have given fair opportunity for the thief to dispose of the goods and for the defendant to acquire them honestly, such possession is slight, if any, evidence of guilt, but its weight is a question of fact for the consideration of the jury and is not to be determined as a question of law by an instruction that evidence of such possession is sufficient to convict.

4. SAME—*possession of stolen property to be evidence of guilt must be exclusive in the defendant.* In order that an inference of guilt may be drawn from the unexplained possession of goods recently stolen it must be an exclusive personal possession on the part of the accused, and proof of the mere finding of stolen goods in the house of the defendant, when there are other inmates of the house capable of stealing the property, is not sufficient.

5. SAME—*explanation of possession of stolen property not required to be "satisfactory."* The law does not impose upon one accused of larceny the burden of "satisfactorily" explaining the possession of stolen property, as it is sufficient to require an acquittal if from all the evidence there is reasonable doubt of his guilt.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. A. W. DESELM, Judge, presiding.

HARRY D. PARKER, (J. BERT. MILLER, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ANKER JEN-SEN, State's Attorney, and ALBERT D. RODENBERG, (H. H. WHITTEMORE, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Frank Kubulis and Tony Yodelis were convicted of burglary and larceny and have sued out a writ of error.

The indictment charged the plaintiffs in error, together with Amelia Kubulis and Maikus Janulis, with breaking into a freight car of the New York Central Railroad Company in the county of Kankakee and stealing twenty bolts of black silk cloth of the value of $2000, five pieces of green half-wool French serge cloth of the value of $150, and five pieces of black half-wool French serge cloth of the value of $150. The defendants were tried together and all were found guilty. A motion for a new trial was allowed as to the other two but the motion of the plaintiffs in error was denied and they were sentenced to the penitentiary. The plaintiffs in error are brothers-in-law,. Amelia Kubulis being the wife of Frank Kubulis and the sister of Yodelis' wife. Janulis is not related to the other defendants.

The silk alleged to have been stolen was received by the New York Central Railroad Company in New York on May 18, 1920, consigned to Samuel Fox & Son, Laporte, Indiana. It was contained in a case (No. 207,778) weighing, with its contents, 192 pounds, which was loaded into New York Central car No. 191825 and on May 29, at Toledo, Ohio, was transferred in good condition into Atchison, Topeka and Santa Fe car No. 38994. It is not shown whether the car was sealed or not when it left Toledo.. The next thing shown in regard to it is that on June 18 it was in the yards of the New York Central Railroad Company at West Kankakee with the seals broken, a hole in the floor of the car near the center big enough for a man to climb through, cases broken open all over the car

and goods scattered around. It was reported to the agent at Kankakee, who ordered the car sent to South Bend, Indiana. No inspection was made of the car or its contents. It was re-sealed and on June 19 was sent to South Bend. The company's records show that the car arrived at Kankakee on June 1, but there is no evidence that anyone saw it at that time or whether or not the seals were broken or the car had been opened between Toledo and Kankakee. The way-bills for the car were lost. When the car arrived at South Bend the case No. 207,778 was found to be empty. Another case consigned to Samuel Fox & Son by J. Steinberg, New York, containing seven bolts of black cloth and three bolts of green cloth, was broken badly and the contents could have been taken out of the box easily. There is no evidence as to when or how this case got into the car. The silk was known as Victory silk, which is manufactured exclusively for Samuel Fox & Son, who are manufacturers and jobbers of woolen, cotton and silk dress goods. It is 35 inches wide and is identified by the word "Victory" woven in the selvage, red, white and blue lines and three stars between the words. There were about 60 yards in each bolt, and the wholesale price was $2.20 a yard, the retail price $3.50 to $4. Fox & Son have eight to ten thousand customers, retail merchants, and have sold thousands of yards yearly since 1918 of Victory silk. They had customers at Momence, Gilman and Chicago to whom they sold Victory silk but not at Kankakee. The serge is a staple article kept and sold by dry goods stores generally, worth at retail $1.50 to $1.75 a yard. The quantity of silk which was missing was 1213 yards, of serge 464 yards.

The plaintiffs in error were car repairers in the employ of the New York Central Railroad Company, Kubulis working in the shop and Yodelis at West Kankakee, two miles away. They lived in adjoining houses in Kankakee. Kubulis, who had been separated from his wife for several months, returned to her in April, 1920, but after living with

her about two months again left her and sued her for a divorce on July 6. Janulis lived in Chicago and worked for the Moravia Construction Company. The defendants are all Lithuanians. Janulis and his wife and baby lived with his brother at 8527 Gilbert court, in Chicago. On July 12, 1920, when he returned from his work he was arrested and taken to the police station. The house was thoroughly searched, with his consent, and an unfinished skirt made of Victory silk was found in an unlocked cupboard in the dining room. Mrs. Janulis at the time said she bought it of a peddler. Janulis was taken by the officers to Kankakee the next day and Yodelis' house and the house in which Kubulis had lived until a week before were searched. In the Kubulis house a silk skirt, a partly finished serge skirt and some pieces of black and of green serge were found. Part of the serge cloth was wrapped up in newspapers in the heating stove in the living room and part in a box under the bed. In Yodelis' house a five-yard piece of green serge was found,—one witness says in the closet, another between the mattress and the springs. A silk skirt was also found there. The three silk skirts contained about 10½ yards of silk and all the serge found amounted to 38 yards. The three men denied any knowledge of any of the goods. Mrs. Kubulis testified that she had no sewing machine and she had some silk over at Mrs. Yodelis' house, using the latter's machine; that she had a silk skirt over there which she had not finished and so left it there until she could fix it up, and she might have left some of the green and black serge there. The black serge skirt was in her bed-room. She testified that she bought the silk in June, 1920, on Jefferson street, in Chicago, between Twelfth and Fourteenth, and the serge on the same street, but she did not know whether it was at the same store. She bought 60 yards at fifty cents a yard and paid $30 for it. She bought it because it was cheap, and she wanted to send some to her mother and sister in the old

country but did not send them any, for she heard that if she did send it they would not get it. There was evidence that the trade on Jefferson street, in Chicago, between Twelfth and Fourteenth streets, is mostly with foreigners. The stores have clerks standing out on the street soliciting business and have their wares on display on the sidewalks. Peddlers sell cloth on the street, and the Polish people buy more than they need when it is cheap and hold it.

The evidence was entirely circumstantial. There was no direct evidence that a larceny was committed in Kankakee county or that the goods were ever in Kankakee county. There was no discovery that the goods were missing there and no inspection was made there. The goods were in the car at Toledo and missing at South Bend. There was no direct evidence connecting any of the defendants in any way with the crime, and the whole case of the prosecution is based upon the supposed possession by the defendants of the stolen property soon after it was stolen.

The twelfth instruction given for the People is objected to. It is as follows:

"You are instructed that possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of such burglary or larceny is *prima facie* evidence of the guilt of the person in whose possession it is found, and evidence showing such possession and the commission of the burglary or larceny, beyond a reasonable doubt, is sufficient to warrant a conviction unless the possession is satisfactorily explained, or unless there appears from all the evidence a reasonable doubt of the guilt of the defendant, the person in whose possession the property is found. You are further instructed that if you believe from the evidence in this case, beyond a reasonable doubt, that the property of the New York Central Railroad Company, a corporation, was stolen and that a burglary or larceny was committed in making such theft, and that the said property was found in the exclusive possession of the defendants, then you will

be warranted in finding the defendants guilty in this case; unless the possession of said property is satisfactorily explained by the evidence, or unless there appears from all the evidence a reasonable doubt of the guilt of the defendants."

The first part of this instruction states the familiar rule that possession of stolen property soon after the theft is evidence of guilt of the person in possession sufficient to warrant a conviction unless explained or unless from all the evidence there appears a reasonable doubt of his guilt. The latter part applies this abstract rule to the particular case by informing the jury that if they believed from the evidence, beyond a reasonable doubt, that the property of the railroad company was stolen and that a burglary was committed in committing the theft, and that the property stolen was found in the exclusive possession of the defendants, the jury would be warranted in finding the defendants guilty unless the possession was satisfactorily explained by the evidence or there appeared from all the evidence a reasonable doubt of the defendants' guilt. This unqualified instruction was not applicable in this case but upon the facts proved was misleading. It purported to direct the jury as to all the facts required to be proved to authorize a verdict, and it was therefore necessary that no element essential to be proved should be omitted. It was not enough to prove that a larceny and burglary had been committed, but it was also necessary to prove that the crime had been committed in the county of Kankakee. The venue must be proved beyond a reasonable doubt equally with any other fact in the case, but the instruction improperly assumes that the crime, if proved to have been committed, was committed in Kankakee county. This was not an admitted fact in the case and should not have been assumed in the instruction. The possession of stolen property which is evidence of theft is possession soon after the crime and must be the exclusive possession of the individual charged. If the burglary and larceny were committed in Kankakee

county it was before June 18, for on that day the broken condition of the car was discovered and it was re-sealed and sent to South Bend the next day. The search of Janulis' house in Chicago was on July 12 and the search of the houses of the plaintiffs in error was on July 13,—at least twenty-four or twenty-five days after the burglary must have been committed. If it be assumed that there was evidence identifying these widely distributed articles of general use as the goods alleged to have been stolen, should the jury have been instructed that the possession of them twenty-five days after they were stolen was sufficient evidence to convict the person in possession, of the larceny of them? The instruction to the jury that such possession is sufficient to convict directs the verdict, for the jury are sworn to deliver a true verdict according to the law and the evidence, and if the evidence is sufficient to convict, it is their duty to find the defendants guilty unless a reasonable doubt arises from other evidence in the case. The instruction is not limited to the statement of the rule that possession of stolen property immediately or soon after it was stolen is evidence that the person in possession stole it. The jurors are told not only that they may take such evidence into consideration in arriving at their verdict, but they are advised as to the weight of the evidence that it is sufficient; that as a matter of law it is their duty as jurors to convict on such evidence unless a reasonable doubt is created by some other evidence in the case. It has been held in several cases that it is proper to instruct the jury that recent possession of stolen goods is evidence that the possessor is guilty of the larceny and also that it is sufficient to convict, but we know of no case where the latter instruction has been given where the possession was three or four weeks after the commission of the crime. In *Comfort* v. *People,* 54 Ill. 404, *Sahlinger* v. *People,* 102 id. 241, *Smith* v. *People,* 103 id. 82, *Langford* v. *People,* 134 id. 444, *Magee* v. *People,* 139 id. 138, and *Williams* v. *People,*

298–34

196 id. 173, the defendant was shown in each case to have been in possession of the stolen property from one to six days after the larceny. The possession must be so recent as to indicate that the possessor must have taken the property, and where it is so remote in time as to have given fair opportunity to the thief to dispose of the goods and to the defendant to acquire them honestly, possession is slight, if any, evidence of guilt and its weight is a question of fact for the consideration of the jury, and not to be determined as a question of law by an instruction that the evidence is sufficient to convict. "Evidence of this nature is by no means conclusive, and it is stronger or weaker as the possession is more or less recent, for the obvious reason that the difficulty of accounting for the possession is increased by the length of time which has elapsed during which the goods may have passed through many hands. The rule is that *recent possession* raises a reasonable presumption against the prisoner." (2 Starkie on Evidence, 614.) Possession of stolen property three months after it had been lost was held not such a recent possession as to put a prisoner on showing how he came by it. (*Rex* v. *Adams,* 3 C. & P. 600.) In a case of possession twenty days after the theft the evidence was left to the jury. (*Cocken's case,* 2 Lewin's C. C. 235.) In *Conkwright* v. *People,* 35 Ill. 204, in discussing the rule of the possession of stolen property as evidence of guilt, reference is made to the note in 2 Starkie on Evidence, 615, in which it is said that it is also to be carefully observed that the mere finding of stolen goods in the house of the prisoner, when there are other inmates of the house capable of stealing the property, is insufficient evidence to prove a possession by the prisoner. This seems to be the recognized rule of the courts, it is said, in reference to this character of testimony. The rule established is, that in order that an inference of guilt may be drawn from the unexplained possession of goods recently stolen it must be an exclusive personal possession

on the part of the accused.  *Watts* v. *People,* 204 Ill. 233; *People* v. *Lardner,* 296 id. 190.

There was no joint possession of the defendants shown. Mrs. Janulis and Mrs. Yodelis were not indicted, though there was as much evidence of possession against them as against their husbands.  No evidence of knowledge on the part of any one of the three men in regard to the articles found is contained in the record,—nothing to indicate that either of them ever saw any of the goods.  Kubulis was not living in the house with his wife where some of the goods were found.  The silk skirts were articles of women's wear and the serge was also women's goods.  The court, by instructing the jury in regard to the effect of possession, assumed that there was evidence tending to show such possession as raised a presumption of guilt.  There was no evidence of the exclusive, personal possession from which the presumption arises by either of the plaintiffs in error. There is no reference in the instruction to the requirement of such a personal, exclusive possession by any one of the defendants individually but the reference is only to the possession of the defendants, and the instruction authorizes a verdict of guilty against all the defendants.  Under the instruction the jurors might well believe that if they found that any one or more of the defendants were in possession of any part of the goods produced in evidence they would be required to find all the defendants guilty.  Further, the law does not impose upon one accused of larceny the burden of satisfactorily explaining his possession of stolen property.  It is sufficient to require an acquittal if from all the evidence there is a reasonable doubt of the defendants' guilt.  *Miller* v. *People,* 229 Ill. 376.

This instruction should not have been given because it omitted the requirement of proof of the venue; because it assumed that possession of stolen goods twenty-five days or more after a larceny is evidence of guilt of the larceny instead of submitting its effect as evidence to the jury; be-

cause it told the jury that evidence of such possession, as a matter of law, required a conviction unless satisfactorily explained or unless a reasonable doubt arose out of the other evidence; because it held each of the defendants liable for the possession of the others without explaining that no one of the defendants was responsible except by reason of his own exclusive possession, and because it was not based on any evidence of an exclusive personal possession.

Three instructions were given defining an accessory before the fact and defining his liability. The case rested entirely upon the evidence in regard to the possession of the property, and there was no evidence from which any of the defendants could be found to be accessories. These instructions should not have been given.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

---

(No. 13876.—Judgment reversed; award set aside.)
THE RIDGE COAL COMPANY, Plaintiff in Error, *vs.* THE IN-
DUSTRIAL COMMISSION *et al.*—(JOHN SHADOWENS, De-
fendant in Error.)

*Opinion filed June 22, 1921.*

1. WORKMEN'S COMPENSATION—*notice of accident is essential to jurisdiction of Industrial Commission.* Under section 24 of the Compensation act notice of the accident must be given to the employer within thirty days, and this notice is essential to the jurisdiction of the Industrial Commission.

2. SAME—*when finding that notice was not given cannot be regarded as a clerical error.* A finding by the arbitrator that notice was *not* given to the employer, as required by section 24 of the Compensation act, cannot be regarded by the Supreme Court as a clerical error, although there was an award of compensation, where the evidence is conflicting as to notice, as the record is presumed to speak the truth in such case and the Supreme Court is not authorized to disregard the finding as to the fact.