(Nos. 75111, 75654 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DONALD ADAMS, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GLORIA VALDEZ, Appellee.

*Opinion filed August 4, 1994.—Rehearing denied October 3, 1994.*

334

MILLER, J., joined by McMORROW, J., concurring.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos, Susan Schierl and Linda J. Jakubs, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellee.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos, Susan Schierl and Linda J. Jakubs, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Anna Ahronheim, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Before us are two criminal cases we have consolidated for review, People v. Adams, No. 75111, and People v. Valdez, No. 75654. Although these cases involve wholly unrelated facts, they share a common feature. In both cases the appellate court reversed the defendants' convictions on the grounds that the State had failed to prove venue beyond a reasonable doubt.

We granted the State leave to appeal in each case. (134 Ill. 2d R. 315.) For the reasons that follow, we agree with the appellate court's conclusion that venue is a material allegation that must be proved by the State beyond a reasonable doubt along with the other elements of an offense. We hold, however, that the State did meet its burden of establishing venue in these cases. Accordingly, the judgments of the appellate court are reversed, and the cases are remanded for consideration of the remaining issues which the parties raised, but the appellate court did not reach.

In People v. Adams, the evidence showed that Edward Peterson owned a 1979 Chevrolet, which he allowed his live-in girlfriend to use. Peterson kept the car at the couple's residence, which was located in the City of Chicago. On May 24, 1991, the girlfriend, Valerie Warren, lent the car to her uncle, Melvin Warren. By the next day, the car was gone. Valerie contacted the police to report it stolen.

Peterson next saw the car at the Chicago police pound on May 27. It had been towed there after the defendant, Donald Adams, crashed it on Interstate 290 near the community of Addison. Two days later, Adams flagged down a Chicago police officer and said that he wanted to turn himself in. Adams told the officer that "he had taken Ed Peterson's car, he was mad at somebody." He also stated that "he was left alone in the

car and that he took the car and he crashed it at Addison."

The officer took Adams to the police station. There the officer discovered that a stolen car report listing Adams as the offender had been filed by Peterson. After the police advised Adams of his *Miranda* rights, he repeated his story about taking the car and crashing it. When the police asked him what had become of the keys, he took them out of his pocket. The Cook County State's Attorney subsequently charged Adams by information with burglary and possession of a stolen vehicle.

At trial Adams did not deny that he had been in possession of Peterson's car. Rather, his defense was that he had permission to use it. Adams claimed that he had a close relationship with Peterson's girlfriend, Valerie, and that the two of them had driven around together in Peterson's car on the night of May 24 and during the early morning hours of May 25. According to Adams, they purchased and used alcohol and cocaine. In Adams' version of the story, they drove to Maywood at 2:30 a.m. to borrow money from Jessie Williams to buy drugs. The pair subsequently drove back to Chicago to buy cocaine. Adams claimed that when the drugs were used up, he left Valerie at a crack house and drove to Williams' home a second time to borrow more money from him. There is no dispute that Maywood is located in Cook County, as, of course, is Chicago.

Disavowing his previous confession, Adams asserted that Valerie had given him permission to take the car on the second trip to Williams' house and that he had intended to drive back to Valerie after he had borrowed the money. As previously noted, however, he ultimately crashed the car on the interstate near Addison, which is several miles and several highway exits northwest of Maywood. He was driving in the opposite direction of Maywood, although he claimed that the crash occurred

when he was trying to make a u-turn. Adams never explained what he was doing on the highway, going west, except to say that he was trying to burn up some gas he had bought for the car.

Adams' story was contested by the other witnesses at trial. Jessie Williams did confirm that he had loaned money to Adams twice during the early hours of May 25, but testified that he did not see Valerie in Adams' company. Although Valerie admitted that she knew Adams, she denied dating him and denied seeing him on May 24. In addition, both Valerie and Ed Peterson testified that Adams had no authority to use the car.

Based on this evidence, the circuit court of Cook County, sitting without a jury, acquitted Adams of the burglary charge, but found him guilty of possession of a stolen motor vehicle, in violation of section 4—103(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1)). The court sentenced Adams to 30 months' probation and ordered him to pay restitution in the amount of $150, the cost of repairing the damage to Peterson's car.

In the Valdez case, the record showed that on September 19, 1986, the defendant, Gloria Valdez, boarded an airliner in Miami, along with two male associates, Victor Valdez and Raul Torres. The airliner was bound for Minneapolis-St. Paul, with one scheduled stop in Chicago.

All three individuals were holding one-way tickets. Gloria had purchased her ticket with cash on the day of departure using the name Louise A. Diaz. Victor and Raul had also bought their tickets that day using cash. The tickets bore consecutive serial numbers. Raul's ticket was purchased under the name Guillermo Valdez.

After the three boarded the plane, a flight attendant noticed that Victor and Raul used the restroom separately, about 30 seconds after one another. The atten-

dant regarded this as unusual because people do not usually go to the restroom before takeoff. The attendant did not see any of the other passengers use the restroom before Victor and Raul did.

Before the plane departed, an airline ticket agent informed an airline service manager of the tickets Victor and Raul had purchased. The manager boarded the plane and advised Victor and Raul that they would have to disembark, which they did. The manager and airline security then searched the two and their luggage for weapons. When none were found, Victor and Raul were allowed to return to the plane.

After the plane departed, the flight attendant who had previously observed Victor and Raul searched the restroom they had used. He discovered four sandwich-type plastic bags containing cocaine. The bags were hidden under the liner of a trash receptacle located beneath the sink. The attendant initially locked the restroom door, but reopened it after talking to the captain. Later, during the flight, he saw Victor and Raul each try to use the restroom. The attendant testified that they were unable to do so because the facilities were occupied and that they then used a different lavatory across the aisle.

When the flight landed in Chicago for its one scheduled stop, Chicago police and agents of the Drug Enforcement Agency boarded the plane. The police seized the bags of cocaine from the restroom and they, along with the DEA agents, escorted Gloria, Victor and Raul from the plane.

During questioning by police in a passenger waiting room, Gloria denied that the drugs belonged to her, denied having any knowledge of the drugs, and denied knowing Victor and Raul. She stated that she was travelling to Minneapolis to see her son and to perform witchcraft for the sum of $300.

Gloria consented to a search of her purse. Authorities found six dollars and a cleaning ticket bearing the name Gloria Valdez. In addition, there were miscellaneous items, including material that "looked like bones or something." Gloria explained that these were used in her witchcraft ritual.

After the search was concluded, police took Gloria's photograph and fingerprints and allowed her to leave. They later discovered that her fingerprints matched latent prints on the tape used to seal the plastic bags of cocaine. As a result, Gloria was arrested for possession of a controlled substance with intent to deliver in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1401).

Over objection, the jury was instructed on constructive possession and accountability. The jury found her guilty, and the court sentenced her to 15 years in prison and imposed a fine of $50,000.

Adams and Gloria subsequently filed appeals in their respective cases. Each raised various grounds for reversal, but in both cases the appellate court reversed on the sole ground that the State had failed to prove venue beyond a reasonable doubt. (*Adams*, No. 1—91—3009 (unpublished order under Supreme Court Rule 23); *Valdez*, 249 Ill. App. 3d 1058.) The remaining issues raised by Adams and Gloria were not addressed.

In its appeal to this court, the State first argues that the appellate court erred in holding that venue must be proven by the State beyond a reasonable doubt. The State cites section 1—6(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 1—6(a)), which provides that "[a]ll objections of improper place of trial are waived by a defendant unless made before trial." The State also invokes section 114—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—1). Subsection (a)(7) of that statute states that the

court may dismiss an indictment, information or complaint on the grounds that the county is an improper place of trial "[u]pon the written motion of the defendant made prior to trial." (Ill. Rev. Stat. 1989, ch. 38, par. 114—1(a)(7).) Subsection (b) specifies that where such motions are not filed in a timely fashion, they shall not be considered and that the grounds for those motions, with some exceptions, "are waived." Ill. Rev. Stat. 1989, ch. 38, par. 114—1(b).

Based on these statutes, the State contends that the General Assembly has now established that venue is not a substantive element of any criminal offense. In the State's view, it is, instead, a personal, procedural right which is waived if not raised by a defendant prior to trial. Because neither Adams nor Gloria brought such a pretrial challenge here, the State asserts that they should have been barred from raising the question of venue later in the proceedings.

This court has recently reiterated its long-held view that venue is a material allegation which must be proved by the State beyond a reasonable doubt along with the other elements of an offense. (*People v. Hagan* (1991), 145 Ill. 2d 287, 300.) Contrary to the State's argument, this rule has not been supplanted by the provisions of section 1—6(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 1—6(a)) or section 114—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—1).

Those statutes provide a procedural mechanism for defendants to seek a change of venue in accordance with their constitutional right (Ill. Const. 1970, art. I, § 8) to be tried in the county where the crime is alleged to have taken place. (See *People v. Carroll* (1992), 260 Ill. App. 3d 319, 327.) They do not alter the State's obligation to prove at trial that the county where the crime is alleged to have been committed is the county where the crime,

in fact, took place. As the committee comments to section 1—6(a) explain, the waiver provision in that statute

> "is in accord with the rule that if a defendant desires a change of venue he must apply therefor before trial commences. (See People v. Davis, 10 Ill. 2d 430, 140 N.E.2d 675 (1957), and People v. Gregory, 16 Ill. App. 2d 576, 149 N.E.2d 198 (1958).) *It is not intended to change in any way the prosecution's duty to allege the place where the offense was committed in accordance with the provisions of Section 1—6, and to prove such allegations in the usual manner.*" (Emphasis added.) 720 ILCS Ann. 5/1—6, Committee Comments—1961, at 23 (West 1992).

In the two cases before us, neither Adams nor Gloria has claimed that venue was improper in the sense that the charging instruments alleged that the crimes were committed somewhere other than the counties where the trials were held. In each case the charging instruments alleged that the crimes occurred in Cook County, and in each case Cook County was the site of the trial.

The problem here is quite different. Defendants' objections are not with the allegations of the charging instruments, but with the State's failure to prove those allegations. This failure of proof is not a matter that defendants could possibly have been required to raise in a pretrial motion. The presumption of innocence relieved them of any obligation to contest the factual basis for the State's case before trial commenced. See *People v. McClellan* (1977), 46 Ill. App. 3d 584, 587.

Because a pretrial motion was not required where, as here, the question of venue involved an alleged failure of proof, it necessarily follows that the absence of such a pretrial motion cannot divest defendants of their right to challenge the sufficiency of the venue evidence following conviction. The question of venue was therefore properly considered by the appellate court in these cases. For the reasons which follow, however, the

appellate court erred in concluding that the State had not met its burden of proving venue beyond a reasonable doubt.

In the Adams case, the appellate court reversed the conviction for possession of a stolen motor vehicle, which was alleged to have been committed in Cook County, because "testimony indicated that the offense may have occurred in another county." This statement suggests that the appellate court may not have been mindful of the proper standard of review. We recently reiterated that a court of review may not reverse a guilty verdict unless the evidence, viewed in the light most favorable to the State, was so palpably contrary to the verdict, so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. We further held that a reviewing court may not substitute its judgment for that of the trier of fact, and that it may not reverse a conviction verdict if any rational trier of fact could have reached the conclusion below. *People v. Harre* (1993), 155 Ill. 2d 392, 398.

Under this standard, there is no basis for disturbing the trial court's verdict. The vehicle started out in Cook County, where Peterson, the owner, and his girlfriend, Valerie, lived. By Adams' own account, he ultimately gained exclusive possession of the automobile and drove it in Cook County. Both Valerie and Peterson testified that he had no authorization to do so.

Adams contends that his conviction must nevertheless be set aside because the State failed to show that he intended to permanently deprive Peterson of the vehicle. In Adams' view, the most he was guilty of was "joyriding." We note, however, that the intent to deprive an owner of his property may be inferred simply from the act of taking another's property. Likewise, it may be inferred from the lack of evidence of intent to return the property or to leave it in a place where the owner

could safely recover it. See *People v. Pozdoll* (1992), 230 Ill. App. 3d 887, 890.

Here, Adams confessed to police that he had taken Peterson's car, and the evidence showed that his flight in the vehicle ended only after he crashed it on the highway. Until that time, he was headed away from Chicago and Valerie. Although he claimed that he intended to return the car to Valerie after using up all the gas, the trier of fact was not required, in light of the totality of the circumstances shown by the evidence, to accept his version of the facts. The totality of the circumstances here supports a conclusion that Adams possessed the requisite intent and that he possessed that intent in Cook County where he took exclusive and unauthorized possession of the car. The appellate court therefore erred in reversing Adams' conviction on the ground that the State had failed to meet its burden of establishing venue.

We reach the same conclusion with respect to the appellate court's reversal of Gloria Valdez's conviction. As we have discussed, the jury in Gloria's case was instructed on theories of accountability and constructive possession. Based on our review of the evidence, there was an adequate basis for the jury to conclude that Gloria's associates maintained constructive possession of the illegal drugs in Cook County and that Gloria is liable for the offense under principles of accountability.

In reversing the jury's verdict, the appellate court focused on the question of constructive possession. It believed that there could be no constructive possession in Cook County because neither Gloria nor her associates had control of the restroom where the drugs were hidden. That, however, was not required.

In reviewing a conviction for possession of a controlled substance, the dispositive issue is not whether a defendant had control over the place where the drugs were found, but whether the defendant had possession

of the drugs themselves. Proof that a defendant had control over the premises where the drugs were located can help resolve this issue because it gives rise to an inference of knowledge and possession of the drugs (*People v. Jones* (1982), 105 Ill. App. 3d 1143, 1148), but it is not a prerequisite for conviction. Indeed, not only does a defendant not need to control the premises, he does not even need to have actual, personal, present dominion over the drugs themselves. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 361.) Constructive possession may exist even where an individual is no longer in physical control of the drugs, provided that he once had physical control of the drugs with intent to exercise control in his own behalf, and he has not abandoned them and no other person has obtained possession. *People v. Fox* (1962), 24 Ill. 2d 581, 585.

In this case, the jury could certainly have concluded that Gloria's associates had physical control of the drugs with intent to exercise control in their own behalf. Evidence showed that the two carried the cocaine on board and hid it in the restroom. No other person obtained possession of the drugs prior to their seizure by police in Cook County, and no serious claim can be made that the drugs were ever abandoned. Gloria's associates concealed them in the restroom only so they could escape detection until the plane reached its destination. Constructive possession therefore existed, and it existed in Cook County. Accordingly, as in *Adams*, the appellate court erred in reversing Gloria's conviction on the ground that the State had failed to meet its burden of establishing venue.

For the foregoing reasons, the judgments of the appellate court are reversed, and these causes are remanded to the appellate court for consideration of the remaining issues which the parties raised, but the appellate court did not reach.

*Reversed and remanded.*

JUSTICE MILLER, concurring:

I concur in the judgment of the court. I do not agree, however, with the majority's conclusion that venue is a material fact in every prosecution and must be established at trial by proof beyond a reasonable doubt. The statutes at issue here are not unconstitutional, and our own doctrine regarding venue is not constitutionally compelled. Accordingly, I would enforce the provisions in our statutory law that require an accused to make, in advance of trial, any challenge to the county in which trial is being conducted.

Article I, section 8, of the Illinois Constitution grants to an accused the right "to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." (Ill. Const. 1970, art. I, § 8.) Earlier constitutions contained similar guarantees. (Ill. Const. 1870, art. II, § 9; Ill. Const. 1848, art. XIII, § 9; Ill. Const. 1818, art. VIII, § 9.) The constitution speaks in terms of vicinage, or the location from which the jury must be drawn, but the concepts of venue and vicinage are closely related. See 2 W. LaFave & J. Israel, Criminal Procedure § 16.1, at 334-35 (1984).

At an early point in our case law, venue became identified with jurisdiction. (See, e.g., Campbell v. People (1884), 109 Ill. 565, 570 ("Under the constitution and laws of this State, as at common law, the local jurisdiction of all offences is in the county where the offence is committed").) Early cases also required that the evidence presented at trial affirmatively show that the charged offense was committed in the county in which the offense was alleged to have occurred. (Dougherty v. People (1886), 118 Ill. 160, 163; Jackson v. People (1866), 40 Ill. 405, 406; Rice v. People (1865), 38 Ill. 435, 436.) An allegation of the place of the offense was said to be a "material averment" (Moore v. People (1894), 150 Ill.

405, 407) or a "jurisdictional fact" (*People v. Adams* (1921), 300 Ill. 20, 24; *People v. McIntosh* (1909), 242 Ill. 602, 604) that the prosecution was required to show. A 1921 decision, *People v. Kubulis* (1921), 298 Ill. 523, 528, declared the State's burden in establishing venue to be by proof beyond a reasonable doubt. *Kubulis* did not cite any authority for that proposition. The requirement of proof beyond a reasonable doubt was not questioned, however, and later decisions reaffirmed the rule. *People v. Long* (1950), 407 Ill. 210, 212-13; *People v. Church* (1937), 366 Ill. 149, 158; *People v. Gregor* (1935), 359 Ill. 402, 404; *People v. Strook* (1932), 347 Ill. 460, 465.

Under prior law, the jurisdiction of a trial court was "limited by its territorial boundaries." (*Weyrich v. People* (1878), 89 Ill. 90, 94.) A court without venue therefore lacked jurisdiction. The identification of venue with jurisdiction explains why earlier decisions finding a failure of proof of venue would reverse and remand the cause for further proceedings rather than simply reverse the conviction outright without ordering a remand, as one would expect when there was inadequate proof of an element of the offense. The failure to establish venue would have rendered the initial decision a nullity, making possible a subsequent trial in a forum possessing jurisdiction over the matter. (See *Campbell v. People* (1884), 109 Ill. 565, 573.) Under this rule, venue was considered to be a jurisdictional prerequisite, and not an element of the offense. More recently, however, venue has virtually come to be treated in the same manner as an element of the offense, and the failure to establish venue has resulted in the outright reversal of the conviction. *People v. McClellan* (1977), 46 Ill. App. 3d 584.

Venue is no longer defined in jurisdictional terms, and our law now draws a clear distinction between the two concepts. (*People v. Caruso* (1987), 119 Ill. 2d 376,

390; *People v. Goins* (1988), 119 Ill. 2d 259, 264-65.) Accordingly, under current law, "The place of trial is not jurisdictional and may be waived by the defendant." (*People v. Ondrey* (1976), 65 Ill. 2d 360, 363.) The contemporary view of venue thus stands in sharp contrast to former practice, as exemplified by *People v. Powell* (1933), 353 Ill. 582, 591, in which the court declared, "Venue is not a matter of form—it is a matter of substance. It is jurisdictional."

Section 1—6(a) of the Criminal Code of 1961 states:

"Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law. All objections of improper place of trial are waived by a defendant unless made before trial." (720 ILCS 5/1—6(a) (West 1992).)

Other provisions specify where venue will lie for transitory and continuing offenses and for offenses in which venue would be proper in more than one place. 720 ILCS 5/1—6(b) through (r) (West 1992).

Section 114—1 of the Code of Criminal Procedure of 1963 provides, in pertinent part:

"(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

\* \* \*

(6) The court in which the charge has been filed does not have jurisdiction;

(7) The county is an improper place of trial;

\* \* \*

(b) The court shall require any motion to dismiss to be filed within a reasonable time after the defendant has been arraigned. Any motion not filed within such time or an extension thereof shall not be considered by the court and the grounds therefor, except as to subsections (a)(6) and (a)(8) of this Section, are waived." (725 ILCS 5/114—1(a), (b) (West 1992).)

If necessary, an evidentiary hearing may be conducted prior to trial to resolve any disputed issues of fact raised

by a motion to dismiss. (725 ILCS 5/114—1(d) (West 1992).) If venue is not proper, the judge may either dismiss the action outright or transfer the matter to an appropriate place of trial; the defendant may be charged anew with the same offense if the cause is dismissed for improper venue. 725 ILCS 5/114—1(e), (f) (West 1992).

Although our prior cases have at times characterized venue as a material averment of a charge, if not an essential element of an offense, to be established by proof beyond a reasonable doubt, due process does not require that venue be treated in that fashion. Because venue is not defined as an element of any offense in Illinois, there is no requirement under the Federal Constitution that the prosecution in a criminal case establish venue beyond a reasonable doubt. (See *McMillan v. Pennsylvania* (1986), 477 U.S. 79, 85-86, 91 L. Ed. 2d 67, 75-76, 106 S. Ct. 2411, 2415; *In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1072-73.) Consistent with that view, courts of other States have concluded that venue is not an element of a charged offense and need not be established at trial by proof beyond a reasonable doubt. See, *e.g.*, *State v. Allen* (Iowa 1980), 293 N.W.2d 16; *State v. Lopez* (1973), 84 N.M. 805, 508 P.2d 1292; *State v. Cauble* (Utah 1977), 563 P.2d 775.

Other statutory provisions reinforce the view that venue is not to be regarded as an element of an offense in Illinois. Section 111—3 of the Code of Criminal Procedure, concerning the requisites of a charging instrument, distinguishes the elements of the offense from the place of its commission. Thus, section 111—3(a)(3) requires that a charge set forth "the nature and elements of the offense," while a separate provision, section 111—3(a)(4), requires that a charge state "the date and county of the offense as definitely as can be done." (725 ILCS 5/111—3(a)(3), (a)(4) (West 1992).) If venue is actually an ele-

ment of the offense, and thus a matter controlled by section 111—3(a)(3), as the majority believes, then the separate reference in section 111—3(a)(4) to the location of the offense must be superfluous.

The requirement that venue be established by proof beyond a reasonable doubt is a judicially created construct that may be altered either by us or by the legislature. As can be seen, the driving force behind the evolution of this doctrine was the identification of venue with jurisdiction. Venue was viewed as a jurisdictional imperative, and it became the State's burden to provide affirmative proof of it; the failure to establish venue meant that the trial court lacked jurisdiction over the matter. Because venue and jurisdiction are no longer synonymous, the reasons for the doctrine have disappeared.

The constitution itself is silent on what means are necessary to protect and effectuate a criminal defendant's venue right. As one member of the court explained more than a century ago, in agreeing with the majority in a case that upheld the power of the legislature to enact statutes regarding venue in criminal cases and to prescribe measures for their enforcement:

"The right guaranteed to the defendant is that of trial by an impartial jury of the county. Whether the burthen of showing that he has not been deprived of that right shall rest upon the People, wholly or only in part, or whether the burthen shall rest upon him to show that he has been deprived of that right, are questions with which the constitution does not deal. Having guaranteed the right, it leaves all questions of detail as to the mode of ascertaining when it shall have been violated, to the legislature, and manifestly, therefore, the question of where the burthen of proof, in this respect, shall in the first instance rest, is purely one of legislative policy." *Watt v. People* (1888), 126 Ill. 11, 35-36 (Scholfield, J.).

One may question whether legislative authority over this subject is as broad as the preceding quote suggests.

Nonetheless, I believe that the provisions found in section 1—6 of the Criminal Code and section 114—1 of the Code of Criminal Procedure are adequate to protect the constitutional right of an accused to have the matter tried in the county where the offense allegedly occurred. Because neither defendant in the two cases consolidated here made a timely challenge to the place in which his or her trial was being conducted, I would find, pursuant to statute, that both defendants have waived any challenge to the venue of the circuit court.

The majority, however, concludes that the provisions of the Criminal Code and Code of Criminal Procedure do not control the problem here, the State's asserted failure to establish venue at trial. Citing our recent decision in *People v. Hagan* (1991), 145 Ill. 2d 287, 300, the majority asserts that venue "must be proved by the State beyond a reasonable doubt along with the other elements of an offense" (161 Ill. 2d at 341), suggesting, of course, that venue itself is an element of the offense. The majority concludes that venue must be established at trial by proof beyond a reasonable doubt and, without identifying the source of that requirement, finds that the waiver provisions of sections 1—6 and 114—1 are irrelevant here. The majority's theory would seemingly leave to these statutes a relatively minor role: that of correcting improper designations of venue that are apparent on the face of the charging instrument. An examination of the authorities relied on by the majority, however, reveals that those cases have in essence manufactured two rights out of one.

In *People v. McClellan* (1977), 46 Ill. App. 3d 584, cited by the majority, the defendant was charged in Champaign County with the commission of several offenses there. The evidence presented at trial, however, showed that one of the crimes actually occurred in Cook County. On appeal the defendant challenged his convic-

tion for that offense, arguing that the State did not prove a material averment in the indictment because it failed to establish the commission of the crime in the county in which he was tried. Relying on section 1—6 of the Criminal Code, the State argued that the defendant had waived this contention by failing to raise it prior to trial. The appellate court declined to find the issue waived:

"But the State mistakes defendant's argument. As defendant states, there is no question of improper venue. Defendant has a constitutional right to trial in the county in which the offense is alleged to have been committed. (Ill. Const. 1970, art. I, § 8.) The indictment alleges that the offense occurred in Champaign County and trial was properly had there. There was no defect in the indictment. The problem here is a failure of proof.

The State's argument can be phrased this way: Defendant has an obligation to raise, before trial, an objection to venue based on his belief that the State will be unable to prove venue as alleged. Merely to make the statement is to refute it. McClellan pleaded not guilty and is presumed to be innocent. He cannot be burdened with such an obligation. Accordingly, the judgment and sentence for attempt murder must be reversed." McClellan, 46 Ill. App. 3d at 587.

This line of reasoning led the appellate court in People v. Carroll (1992), 260 Ill. App. 3d 319, also cited by the majority, to discern in the constitutional guarantee two separate aspects of venue:

"[The] substantive element of venue differs from the related and equally well-established procedural aspect of venue, which, in Illinois, means that although criminal cases are to be tried in the county where the offense was committed [citation], 'all objections of improper place of trial are waived by a defendant unless made before trial.' (Ill. Rev. Stat. 1987, ch. 38, par. 1—6(a); People v. McClellan (1977), 46 Ill. App. 3d 584, 587, 360 N.E.2d 1225, 1227.) The former addresses 'a failure of proof,' that is, whether the State has proved beyond a reasonable doubt that the defendant committed the offense in the county where he was tried [citations], while the latter guarantees that the

trial takes place in the county where the indictment alleges that the offense was committed. [Citations]." *People v. Carroll* (1992), 260 Ill. App. 3d 319, 327.

The court in *Carroll* went on to describe "the substantive aspect of venue" as "a necessary element of an offense." (*Carroll*, 260 Ill. App. 3d at 327.) Yet the distinction suggested by *Carroll* between the two types of venue is illusory rather than real, as the opinion's subsequent discussion demonstrates. *Carroll* noted that the courts of this State "have consistently applied the provisions of [section 1—6] to determine questions regarding the substantive as well as the procedural aspect of venue," and the court concluded, "in order to sufficiently establish venue in a particular county the State must prove beyond a reasonable doubt only that which is required by section 1—6." (*Carroll*, 260 Ill. App. 3d at 328.) If, in fact, section 1—6 fully describes the State's burden with respect to venue at trial, as the *Carroll* court believes, then one must ask why the remaining statutory provisions relevant here cannot be given full and equal effect, including the provisions mandating waiver of untimely venue objections.

The majority and its authorities—*Carroll* and *Mc-Clellan*—mistakenly assume that a pretrial hearing, such as that contemplated by section 114—1, is not sufficient to protect a defendant's right to be tried in the county where the offense allegedly occurred and, further, that a substantive right of venue exists apart from the procedural guarantee protected by the statutes. Yet the source of this separate right is nowhere identified, and even *Carroll* allowed that the "substantive aspect of venue," like its supposed procedural counterpart, is controlled by section 1—6 of the Criminal Code, with the added fillip that venue must be established beyond a reasonable doubt. At bottom, *Carroll* and *McClellan* are perhaps best understood as efforts to reconcile the

judicial doctrine of venue with the legislative provisions addressing the same subject.

Assuredly, venue is an important right. It is, however, procedural rather than substantive, and one that the defendant may be required to invoke prior to trial. Sections 1—6 and 114—1 provide the tools necessary for a defendant to challenge the venue of the court in which the charge is being brought, and I agree with the State that an accused, armed with the information available to him through modern discovery procedures, may be held to the requirement of making that challenge in advance of trial. As I have noted, section 114—1 provides for an evidentiary hearing when disputed questions of fact exist. Although the statute does not specify what burden of proof governs the proceeding, having the State establish venue at that time by a preponderance of the evidence would be appropriate.

Requiring the defendant to object to venue is essentially no different from requiring a defendant to raise, before trial, other procedural guarantees of constitutional dimension, such as the right to a speedy trial, protected by the same provision of our constitution (Ill. Const. 1970, art. I, § 8). (See *People v. Manley* (1990), 196 Ill. App. 3d 153, 171-74 (Steigmann, J., concurring in part and dissenting in part).) Nor does enforcing the venue right through these procedural means require an accused to strip himself of the presumption of innocence enjoyed by a defendant in a criminal case. One making a challenge to the venue of a criminal prosecution can turn to statements of witnesses, police reports, bills of particulars, and other forms of disclosure mandated by our criminal discovery rules, if the charging instrument itself fails to prompt the necessary objection.

The committee comments to section 1—6, cited by the majority, similarly fail to support the rule perpetu-

ated here. The majority quotes a portion of the comments to the effect that the waiver provision found in section 1—6 "is not intended to change in any way the prosecution's duty to allege the place where the offense was committed \*\*\* and to prove such allegations in the usual manner." (720 ILCS Ann. 5/1—6, Committee Comments—1961 (Smith-Hurd 1992).) As the remainder of the committee comments to section 1—6 demonstrates, however, the effect of the new statute was not as limited as the preceding quotation might suggest. Referring to the waiver provision of section 1—6(a), the comments go on to state:

"It is designed to prevent a defendant who knows that the place of trial is improperly alleged from saying nothing until his gamble on the verdict has lost and then raising the issue for the first time. This rule is now applicable in civil actions [citation]. It is contemplated that hearings on objection, [sic] to place of trial will be conducted in the same manner as in civil actions." 720 ILCS Ann. 5/1—6, Committee Comments—1961 (Smith-Hurd 1992).

In section 114—1 of the Code of Criminal Procedure of 1963, the legislature later specified the practice to be followed in making objections to venue. The committee comments to that statute explain:

"Subsection (a)(7) provides for a motion to dismiss in cases of improper venue. Substantive provisions will be found in Ill. Crim. Code of 1961, section 1—6. It should be noted that objections to venue if not made prior to trial are considered waived under that section and under section 114—1(b) of this Code. The place of trial should be distinguished from the problem of state criminal jurisdiction and the problem of the jurisdiction of particular courts. The place of trial is fixed by the Ill. Const. of 1870, Art. II, § 9, as '... the county or district in which the offense is alleged to have been committed.' " 725 ILCS Ann. 5/114—1, Committee Comments—1963 (Smith-Hurd 1992).

Again, as the comments state, current law draws a sharp distinction between venue and jurisdiction.

Through the provisions found in section 114—1, the treatment of venue in criminal cases is now more closely aligned with venue practice in civil cases. (See 735 ILCS 5/2—104(b) (West 1992) (objections to improper venue in civil action waived if not raised in timely manner); *Horn v. Rincker* (1981), 84 Ill. 2d 139, 145-46.) The rule espoused by the majority, however, will simply permit defendants to continue to make the gamble condemned in the 1961 committee comments, unencumbered by the sensible rule of waiver formulated by the legislature a generation ago.

Properly regarded, venue is a nonjurisdictional procedural right, a personal privilege that an accused may waive. (See *Hagner v. United States* (D.C. Cir. 1931), 54 F. 446, 449.) The legislature has provided the means of enforcing that right through the provisions of section 1—6 of the Criminal Code of 1961 and section 114—1 of the Code of Criminal Procedure of 1963, which together provide a mechanism for challenging venue in advance of trial. In declining to take a fresh look at an old rule, the majority perpetuates an obsolete practice and frustrates the legislature's constitutionally sound intent to provide a pretrial determination of venue.

JUSTICE McMORROW joins in this concurrence.